United States District Court
for the District of Columbia

| | | |
|---|---|---|
| Ralph deToledano, an individual, | ) | |
| 500 25th St., N.W., No 1010 | ) | |
| Washington, D.C. 20037 | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| John D. O'Connor, Esq. | ) | |
| 287 Makin Grade | ) | |
| Kentfield, CA  94904 | ) | |
| | ) | |
| William Mark Felt, Jr. | ) | |
| 12702 NW 20th Court | ) | |
| Coral Springs, FL 33071-7754 | ) | |
| | ) | |
| William Mark Felt, Sr. | ) | |
| 2309 Redford Pl. | ) | |
| Santa Rosa, CA 95403-8935 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR FRAUD, RESCISSION OF CONTRACT, AND
INFRINGEMENT OF COPYRIGHT**

Plaintiff, Ralph deToledano, for his complaint against defendants, alleges:

1. This is an action for fraud, declaratory relief pursuant to 28 U.S.C. §2201,

infringement of copyright pursuant to 17 U.S.C. §501 *et seq*., and conversion of copyright.

Jurisdiction and Venue

2. This court has jurisdiction over this action pursuant to 28 U.S.C. §1332, because it

arises between citizens of different states and the amount in controversy exceeds $75,000.00,

and 28 U.S.C. §1331, because it arises under the laws of the United States, particularly 17 U.S.C.

§101 *et seq*.

3.   Venue is proper in the United States District Court for the District of the District of Columbia, pursuant to 28 U.S.C. §1391(a), because a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

Parties

4.   Plaintiff Ralph deToledano is an individual who has resided at all relevant times in the District of Columbia.

5.   Defendant John O'Connor is an individual who resides, on information and belief, in Kentfield, California.  Defendant O'Connor is a shareholder and principal of Howard, Rice, Nemerovski, Canady, Falk & Rabkin which, on information and belief, is a professional corporation of lawyers organized under the laws of the State of California, with its principal place of business in San Francisco, California.

6.   Defendant Mark Felt, Jr. is an individual who resides, on information and belief, in Coral Springs, Florida.

7.   Defendant W. Mark Felt, Sr. is an individual who resides, on information and belief, in Santa Rosa, California.

8.   Plaintiff is the owner of an undivided 50% interest in the copyright, and all related rights, in the book The FBI Pyramid from the Inside ("FBI Pyramid"), authored substantially by plaintiff, created in 1979, registered with the U.S. Copyright Office February 4, 1980 (reg. no. TX-405-597), and published by Putnam in 1980.

9.   FBI Pyramid is a 351 page biographical non-fiction book about the FBI career of W. Mark Felt, Sr., and is an original literary work of authorship as defined in 17 U.S.C. §101.  Felt Sr., a career FBI agent and executive for 32 years, rose to the position of Deputy Director, the second in command of the Federal Bureau of Investigation, during the years 1971-1973, and thus claimed to be the only person to have risen to the top of the "FBI pyramid from the inside."

10.  For more than 30 years, W. Mark Felt, Sr. kept a secret of substantial political and commercial interest: that he was the confidential informer popularly known as "Deep Throat," who helped The Washington Post unravel the mysteries of the Watergate break-in and cover-up by Richard M. Nixon's White House.  "Deep Throat lied to his family, to his friends, and colleagues, denying that he had helped us," Bob Woodward reportedly said in a lecture in 2003. When asked if he were "Deep Throat," Felt Sr. invariably stated, "I was not he and I am not he." Felt Sr. "had recently admitted his secret identity, privately, to intimates, after years of hiding the truth even from his family. . .  but [he] was adamant about remaining silent on the subject—until his death—thinking his past disclosures somehow dishonorable," according to an article authored by O'Connor.  "He has kept quiet through seven presidencies and *despite an anticipated fortune that might have come his* way from a tell-all book, film, or television special" (emphasis added).  Felt Sr. also denied his involvement repeatedly to plaintiff on several occasions in connection with their work on FBI Pyramid, which was to be a full and accurate account of Felt Sr.'s FBI career, including his role in the investigation of the Watergate break-in.  As Felt Sr. wrote in FBI Pyramid, "I never leaked information to Woodward and Bernstein or to anyone else!"

11.  On or about May 31, 2005, it was reported in the July 2005 issue of Vanity Fair magazine, for the first time anywhere, that Felt Sr. finally acknowledged to the world that he was indeed "Deep Throat."  This fact had been known to Felt Sr.'s immediate family, certain close friends, and to O'Connor, for several years.  The disclosure made in the Vanity Fair article began a cascade of front page news reports about what the Washington Post called "Washington's most celebrated secret source."

12.  At no time before June 1, 2005 did plaintiff know, or have reason to know, either that Felt Sr. was "Deep Throat," or that Felt Sr. had determined to reveal publicly at any time

3

that he was "Deep Throat."  At no time did the Felts or O'Connor tell plaintiff anything to the contrary.

13.  In 2003, Felt Sr. was in physical and mental decline.  His close family, knowing the truth about his role as "Deep Throat," recognized the commercial value of disclosure of these facts, and urged Felt Sr. that such a disclosure would provide commercial opportunities for his children and grandchildren.  Because of Felt Sr.'s mental decline, he was no longer in a position to contribute historical facts concerning his FBI career to any commercial exploitation of the "Deep Throat" story.  According to O'Connor, Felt Sr. was capable of making contributions in the area of "big ideas," if you catch him on a "good day," but may not remember specific conversations.   For these reasons, on information and belief, the value of <u>FBI Pyramid</u> to the commercial exploitation of the "Deep Throat" story, as one of the few comprehensive sources of biographical information about Felt Sr., was and is substantial.

14.  In early 2003, Mark Felt, Jr. approached plaintiff to discuss plaintiff's rights in <u>FBI Pyramid</u>.  Felt Jr. explained to Plaintiff that he wished to honor his father's FBI career by re-releasing the book, possibly with some additional background material about Felt Sr.'s life.  He offered Plaintiff 33% of receipts for any substantial use of the original book, and 10% of receipts for any other story about Felt Sr. which did not derive substantially from <u>FBI Pyramid</u>.

15.  Defendant O'Connor, identified as a literary agent for the Felt family, then contacted plaintiff.  O'Connor did not disclose that he was acting as a lawyer, nor that he had any personal or financial interest in authoring, promoting or licensing the story of Felt Sr.  O'Connor wrote to plaintiff on May 9, 2003 enclosing a proposed contract with the 33%—10% royalty structure and an arbitration clause.  Responding to plaintiff's confusion about the two tiered royalty structure, O'Connor attempted to reassure plaintiff that "if the parties disagreed as to whether the final

version [of the book] entitled you to 10% or 33%, either party would have the right to go to arbitration."

16.  Plaintiff continued to express confusion and disagreement with the proposed terms, and on September 2, 2003, O'Connor wrote to plaintiff that Felt Jr. "understands why you would be upset, based upon that misunderstanding," but in any case, "he suggests we do it even more simply.  He would pay you $5,000.00 in cash for your share of the rights, plus $5,000.00 if he ever gets a book published." O'Connor knew his statement "if he ever gets a book published" was misleading, because in truth there was little or no doubt that the story of "Washington's most celebrated secret source" would have considerable commercial value—in O'Connor's words, an "*anticipated fortune . . .* from a tell-all book, film, or television special."  O'Connor was also again asserting that he (O'Connor) was acting solely as a representative of the Felts, and that the proposal to obtain plaintiff's copyright contemplated nothing more than a rewriting and republication of FBI Pyramid, with the possible addition of some "background" material about Felt Sr.'s FBI career.  Plaintiff expressed his willingness to accept this new proposal by letter on September 7, 2003.

17.  About six weeks later, on October 27, 2003, O'Connor sent plaintiff a proposed Agreement to Assign Copyright, and Assignment, and represented "we will forward you a check for $5,000.00 upon your execution of this contract."  The parties to this proposed agreement were to be plaintiff, Felt Sr., and Felt Jr.   O'Connor was not to be a party to the proposed agreement, and was mentioned in the documents only as the designated recipient of notices to the Felts.  Plaintiff signed and returned both documents.  Several weeks later, when no payment had been received, on or about December 6, 2003, plaintiff wrote to inform O'Connor and the Felts that he was canceling the purported contract because the Felts had failed to pay as agreed.  O'Connor responded on December 15, 2003, asserting that "my client" expected to receive some

money, and expected that he would be able to remit the $5,000.00 "by the first of the year, if that is alright."

18.  The first of the year passed, as did all of 2004, and the first of 2005.  O'Connor attempted to keep plaintiff engaged in the process of consummating the proposed Agreement to Assign Copyright, by assuring plaintiff that he (O'Connor) would come to Washington and drop off a $5,000.00 check between January 29 and 31, 2004.  That did not happen.

19.  On February 18, 2005, O'Connor wrote to plaintiff, enclosing his personal check for $5,000.00 as payment for "the rights to any and all copyright interest you have in The FBI Pyramid, previously transferred to our clients."  No such transfer had ever occurred, because transfer of the rights by assignment was conditioned upon timely payment by the Felt Jr. and Felt Sr. of the first $5,000.00, which had not occurred.  Further, plaintiff had already repudiated the proposed Agreement to Assign Copyright in writing.  Throughout these years, Mark Felt Sr.'s denial that he was "Deep Throat" was still unequivocal and widely accepted, and neither the Felts nor O'Connor disclosed to plaintiff that Felt Sr. was "Deep Throat," or had determined to reveal publicly that he was.

20.  Commercial exploitation of disclosure of the identity of "Deep Throat" was at all relevant times central to defendants' dealings with plaintiff, alleged above. O'Connor reported to the Wall Street Journal in mid-2005 that he was entertaining multiple book and film proposals in relation to Felt Sr.'s revelation that he was "Deep Throat."  The book rights were estimated at as approximately $1,000,000 in a Fox News report of June 1, 2005.   Once the identity of "Deep Throat" had been revealed, the Felt family even sold family photographs to capitalize on their new found celebrity.

21.  Plaintiff is informed and believes, and based thereon alleges, that upon receiving the executed assignment, O'Connor and the other defendants made use of it to their commercial

advantage, including using it in book and media negotiations and filing it with the Copyright Office, despite the fact that the express terms of the written agreement made the assignment contingent upon Plaintiff's receipt of the first $5,000 payment.

22.  O'Connor's involvement in these transactions was as a principal, a fact not disclosed to plaintiff.  The belated payment to Plaintiff on February 17, 2005 was made by O'Connor's personal check, a fact O'Connor made no effort to explain.  On May 1, 2006, O'Connor sent plaintiff two checks totaling $5,000.00, one of which was again drawn on his personal account. The other was issued by Kuhn Projects, LLC, apparently acting as O'Connor's representative (with Felt Jr.) as author of a book entitled A G-Man's Life, the putative rewrite of The FBI Pyramid.  A G-Man's Life is a derivative work of FBI Pyramid, as O'Connor concedes, in substance, in the introduction to that work.  Once Felt Sr.'s identity as "Deep Throat" had been revealed, O'Connor began negotiations on behalf of the Felts and himself with Universal Pictures, which, on or about June 16, 2005, culminated in agreements to transfer and/or license Felt Sr.'s life story, including The FBI Pyramid, O'Connor's Vanity Fair article ("I'm the Guy They Called Deep Throat"), and the life stories of O'Connor and Felt Jr.

23.  Plaintiff is informed and believes, and based thereon alleges, that the arbitration clause in the proposed Agreement to Assign Copyright was procured by fraud, and is unconscionable, and is unenforceable on either ground.  As alleged above, after O'Connor sent plaintiff a proposed contract with the 33%—10% royalty structure and an arbitration clause on May 9, 2003, plaintiff expressed confusion and concerns about its meaning.  Responding to plaintiff's confusion, O'Connor wrote to plaintiff and reassured him that "if the parties disagreed as to whether the final version [of the book] entitled you to 10% or 33%, either party would have the right to go to arbitration." At the time O'Connor made representations to plaintiff about the arbitration procedure, O'Connor knew that plaintiff was 87 years of age, and not represented by

counsel; O'Connor was a practicing lawyer in California, a graduate of the University of

Michigan law school and a former Assistant U.S. Attorney, with over 30 years' experience in

complex transactions and litigation.  Plaintiff is informed and believes, and based thereon

alleges, that O'Connor's purpose in describing the arbitration remedy was to mislead plaintiff

into believing that arbitration would be to his benefit, a simple and cost-effective way to resolve

disputes over the division of royalties.  Plaintiff is informed and believes, and based thereon

alleges, that the true facts were otherwise: that the form of arbitration selected and inserted into

the proposed agreement by O'Connor was calculated to be substantially more costly to the party

initiating arbitration than a conventional lawsuit in court, in that arbitration would require that

each party pay an estimated $3,500 per day for an arbitrator's time, in addition to his own legal

expenses. In a copyright royalty dispute, in which the central issue would be whether a

subsequent work represented a substantial copy of plaintiff's 351 page book, an arbitrator could

be expected to spend several days or weeks taking evidence and deciding legal issues, at an

estimated cost to each party in excess of $15,000.  Defendants did not tell plaintiff that they

intended that the arbitration clause apply not only to disputes over the royalty structure, but to

any dispute which could arise under the proposed contract.  Finally, the arbitration forum

selected by defendants was in California, approximately 3,000 miles from plaintiffs home. Thus,

unbeknownst to plaintiff, the arbitration clause was not an expeditious means of resolving

royalty disputes under the proposed agreement, but instead, was a tactic of defendants calculated

to deter plaintiff from exercising rights under the proposed agreement.

     24.  Because of the structure of the transaction, it was extremely unlikely that defendants

would ever have need of the arbitration procedure; once plaintiff executed the assignment of

copyright, defendants had obtained full performance.  However, on information and belief,

O'Connor took steps to ensure that the arbitration provision would not be binding on defendants,

in that O'Connor failed to have his clients execute the proposed agreement containing the arbitration clause, or to indicate their assent to the agreement in any way, even though he had the proposed agreement signed by plaintiff in his possession for over 30 months, even up to and including May 10, 2006, the day defendants filed a purported demand for arbitration with JAMS/Endispute in San Francisco, California, to which was attached the proposed agreement, still unexecuted by Felt Sr. or Felt Jr.

25.  Defendants' effort to initiate a costly arbitration proceeding against plaintiff is fraudulent and in bad faith, and threatens imminent harm to plaintiff.  The arbitration provision was not openly or fairly entered into, does not apply with equal force to defendants because they knowingly avoided subscribing to it, and was inserted by defendants into their dealings with plaintiff as a means of creating delay and expense, and thus to discourage plaintiff from pursuing legitimate claims.  For all of the reasons alleged above, the alleged agreement to arbitrate is fraudulent and substantively unconscionable, and plaintiff is entitled to an order declaring that it is unenforceable.

First Claim for Relief

(Fraud)

26.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 25 as though fully set forth here.

27.  Defendants, and each of them, made material misrepresentations to plaintiff as alleged above, in the following particulars, among others.

a.  Felt Sr. told plaintiff repeatedly over a period of years that he was not the source of information about the Watergate break-in known as "Deep Throat," despite being under an obligation to make complete and accurate disclosures to plaintiff about all noteworthy

9

aspects of his FBI career; these representations were false, and in truth, Felt Sr. was the source known as "Deep Throat."

      b.  Felt Jr. told plaintiff that he wished to acquire plaintiff's copyright interest in FBI Pyramid only for the purpose of authoring an updated version of that book, to include some additional "background" information, to honor his father's FBI career.  In truth, Felt Jr. wished to acquire plaintiff's copyright interest because Felt Jr. knew that his father, Felt Sr., was about to disclose publicly that he was the source known as "Deep Throat," a fact which would materially increase the value of the copyright in FBI Pyramid, in future books, and in magazine articles, films, and other media.

      c.  Felt Jr. and O'Connor told plaintiff, in or about December, 2003, and at various times through 2004 and 2005, that the reason the first $5,000 payment under the terms of the proposed Agreement to Assign Copyright had not been made was that Felt Jr. was having difficulty assembling the money.  In truth, on information and belief, the reason the payment was not made was that Felt Sr. was reconsidering whether to disclose his identity as "Deep Throat," a decision which would profoundly affect the commercial value to defendants of plaintiff's 50% copyright interest; defendants were attempting to give false assurances to plaintiff to avoid plaintiff's withdrawal from the arrangement while they persuaded Felt Sr. to go through with the planned disclosure.

      d.  Felt Sr., Felt Jr. and O'Connor told plaintiff, in the proposed Agreement to Assign Copyright, that "Felt wishes to write and/or publish a book concerning the life and career of WMF [Felt Sr.] ("Book").  Felt may incorporate aspect of The Work [FBI Pyramid] into any such Book, and therefore wishes to obtain full ownership of the Copyright to The Work and avoid any possible dispute over claims of copyright infringement, or any and all other claims, related to The Work."  In truth, because the Felts owned the counterpart 50% interest in the

copyright in <u>FBI Pyramid</u>, their exercise of the rights of a copyright holder would not constitute an infringement, but would give rise to a duty to account to plaintiff for 50% of copyright revenue; and, further, the Felts and O'Connor intended to do much more than simply "write and/or publish a book," but gave this reason in an effort to obscure their true intentions.

28.  Defendants, and each of them, failed to disclose to plaintiff material facts which were necessary in order to make previous material representations not misleading, in the following particulars.

a.  Felt Sr.'s repeated denials that he was the source known as "Deep Throat" constituted affirmative misrepresentations which were material to any decision by his co-copyright owner concerning the value of the copyright and the disposition thereof.  Thus, in the dealings with plaintiff, defendants knew or should have known that plaintiff believed Felt Sr.'s denials, and an affirmative disclosure was necessary in order to prevent those repeated denials from being materially misleading, but at no time did defendants make any such disclosure to plaintiff;

b.  Felt Sr.'s repeated denials that he was the source known as "Deep Throat" constituted, at a minimum, an affirmative representation that Felt Sr. did not intend to disclose publicly the true fact of his identity as "Deep Throat."  Thus, if defendant contends, contrary to the true facts, that a person in plaintiff's position was on inquiry notice that Felt Sr. was the source known as "Deep Throat," defendants were under an obligation to disclose to plaintiff that Felt Sr. had changed his position and decided to disclose this fact publicly for commercial benefit of his family and O'Connor, among others, in order to make Felt Sr.'s repeated assertions to the contrary not misleading, but at no time did defendants make any such disclosure to plaintiff.

29.  In justifiable reliance on defendants' false and misleading statements and omissions, plaintiff executed an Assignment of his 50% copyright in <u>FBI Pyramid</u>, and has been injured thereby, including legal and other costs incurred in resolving the effects of defendants' fraud, and specifically, the costs incurred and to be incurred in contesting defendants' positions in arbitration, actually and proximately caused by defendants' fraud.

<strong>Second Claim for Relief</strong>

(Constructive Fraud)

30.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 25 as though fully set forth here.

31.  Felt Sr., and Felt Jr. as an assignee of Felt Sr.'s copyright interest, in whole or in part, were in the nature of tenants in common with plaintiff in the ownership of the copyright in <u>FBI Pyramid</u>.  In this capacity, Felt Jr. and Felt Sr. had the right to exercise the rights of a copyright owner, and to grant non-exclusive licenses in the work to others, and for those reasons, owed plaintiff certain fiduciary duties, including the duty to account for revenue from licensing or other uses of the copyright.

32.  Because of the Felts' fiduciary duties, the Felts also owed plaintiff a duty to make adequate disclosures in their dealings involving their joint copyright interest in <u>FBI Pyramid</u>. The Felts breached this duty when they engaged in negotiations with plaintiff to acquire his copyright interest while failing to disclose that Felt Sr. was "Deep Throat," or the impending public disclosure of that fact.

33.  In justifiable reliance on defendants' false and misleading statements and omissions, plaintiff executed an Assignment of his 50% copyright in <u>FBI Pyramid</u>, and has been injured thereby.

**Third Claim for Relief**

(Declaratory Relief)

34.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 25 as though fully set forth here.

35.  An actual and justiciable dispute has arisen between plaintiff, on the one hand, and defendants and each of them, on the other hand, in that:

a.  Plaintiff claims that he is the owner and holder of an undivided 50% copyright in FBI Pyramid;

b.  Plaintiff claims that defendants procured an executed Assignment of Copyright from plaintiff by fraudulent misrepresentations and failure to disclose material facts when defendants were under an affirmative duty to do so;

c.  Plaintiff claims that defendants, and particularly O'Connor, induced plaintiff to sign a proposed Agreement to Assign Copyright, containing an arbitration provision, by misleading plaintiff, and/or by failing to make required disclosures, as to the purpose and nature of the arbitration provision, including that defendants intended to require plaintiff to arbitrate disputes concerning performance and validity of the proposed Agreement to Assign Copyright, and to avoid any obligation to submit such disputes to arbitration by failing to execute the proposed Agreement to Assign Copyright;

36.  Defendants deny all of the foregoing allegations of the preceding paragraph and sub-parts.

37.  Plaintiff is entitled to, and hereby prays for, entry of a judgment declaring the rights and duties of the parties with respect to the foregoing disputes, and specifically, that plaintiff is the owner and holder of a 50% interest in the copyright in and to FBI Pyramid; that the proposed Agreement to Assign Copyright, and the executed Assignment of Copyright, were void *ab initio*;

that plaintiff effectively repudiated any agreement or assignment that may have come into existence; that plaintiff is under no duty to submit any dispute with defendants to arbitration.

**Fourth Claim for Relief**

(Infringement of Copyright)

38. Plaintiff incorporates by reference the allegations of paragraphs 1 through 25 as though fully set forth here.

39. O'Connor was credited with authoring an eight page article in the July, 2005, issue of Vanity Fair magazine, entitled "I'm the Guy They Called Deep Throat" (the "Vanity Fair article"). Plaintiff is informed and believes, and based thereon alleges, that O'Connor authored the Vanity Fair article; that O'Connor was familiar with the contents of FBI Pyramid when he did so; that the Vanity Fair article is a derivative work of FBI Pyramid, and embodies substantial portions of FBI Pyramid; that these characteristics of the Vanity Fair article were the result of knowing and intentional copying by O'Connor.

40. O'Connor has copied and infringed plaintiff's rights in FBI Pyramid by negotiating contracts to exploit exclusive rights to the work, and by denying plaintiff's 50% copyright interest to others, without accounting to plaintiff for plaintiff's share of any royalties, fees, or other revenue.

41. Plaintiff is informed and believes, and based thereon alleges, that he has sustained injury and damage as a direct and proximate result of O'Connor's copying and infringement, as alleged above.

**Fifth Claim for Relief**

(Conversion of Copyright)

42. Plaintiff incorporates by reference the allegations of paragraphs 1 through 25 as though fully set forth here.

43.  The purported agreement to assign copyright provided, in pertinent part, "5. Payments.  Felt agrees to pay RTD $5,000, after which RTD will execute the Assignment, and after which payment Felt shall be sole and full owner of all such copyright."

44.  Plaintiff is informed and believes, and based thereon alleges, that defendants and each of them wrongfully exercised dominion and control over plaintiff's copyright in FBI Pyramid, in addition to infringement under  17 U.S.C. §501 *et seq*., by representing that they held rights which in truth belonged to plaintiff and were legally authorized to contract to convey, license, and/or waive such rights.  Defendants made such representations to Universal Pictures, Kuhn Projects, Vanity Fair, and others.

45.  Plaintiff has been injured in his property by defendants' conversion, in that he has incurred expense in an effort to reclaim his copyright interest, and his ability to commercially exploit his copyright has been impaired and hindered, to his financial detriment.

**Sixth Claim for Relief**

(Rescission of Proposed Agreement and Assignment)

46.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 25 as though fully set forth here.

47.  The purported Agreement to Assign Copyright, and Assignment, if held to be a contract between the Felt defendants and plaintiff, were and are unconscionable, by reason of plaintiff's age and understanding, defendants' superior bargaining position and knowledge, grossly inadequate consideration, failure of defendants to execute the contract and unequivocally bind themselves to its provisions, and actual and constructive fraud, all as more particularly alleged above.   Alternatively, plaintiff's signature on the purported Agreement to Assign Copyright, and Assignment, was procured by actual and/or constructive fraud, as alleged abov.

15

48. The purported Agreement to Assign Copyright, and Assignment are therefore voidable at plaintiff's instance, and plaintiff prays for entry of an order and judgment declaring such agreement and assignment to be void.

WHEREFORE, Plaintiff prays:

1. For a judgment, including a declaratory judgment, that the purported Agreement to Assign Copyright, and Assignment, are void *ab initio*, in that they were procured by fraud and are unconscionable, and that plaintiff retains his undivided 50% interest in the copyright in FBI Pyramid;

2. For general and special damages, for fraud and/or conversion of copyright, in an amount to be proved at trial;

3. For damages for infringement of copyright, or in the alternative, for statutory damages pursuant to 17 U.S.C. §504, in an amount to be proved at trial;

4. For an order, including but not limited to a temporary restraining order, preliminary injunction, and permanent injunction, prohibiting defendants from proceeding under the purported arbitration provision of the proposed Agreement to Assign Copyright, and

5. For a temporary restraining order, preliminary injunction, and permanent injunction, against further copyright infringement by defendants;

6. For general damages for emotional and physical distress, in an amount to be proved at trial;

7. For reasonable attorneys' fees and costs as provided in the Copyright Act;

8. For damages by way of punishment and example for defendants' intentional and malicious fraud and conversion; and

9.  For such other relief as the court deems just and proper.


Karr & Allison, P.C.


By:_____
Theodore S. Allison (D.C. Bar #441089)
1920 N Street, N.W., Suite 300
Washington, D.C.  20036
Telephone (202) 331-7600
Attorneys for Plaintiff



Demand for Jury Trial

Plaintiff respectfully requests a trial by jury on all claims stated herein which by law may be tried to a jury, pursuant to the Constitution and Statutes of the United States.


Karr & Allison, P.C.


By:_____
Theodore S. Allison (D.C. Bar #441089)
1920 N Street, N.W., Suite 300
Washington, D.C.  20036
Telephone (202) 331-7600

Attorneys for Plaintiff