UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA


RALPH DE TOLEDANO, an individual,          Case No.    1:06CV01214 JDB
500 25th St., N.W., No. 1010
Washington, D.C.  20037

       Plaintiff

        v.

John D. O'Connor, Esq.
287 Makin Grade
Kentfield, CA  94904

William Mark Felt, Jr.
12702 N.W. 2th Court
Coral Springs, FL  33071-7754

William Mark Felt, Sr.
2309 Redford Place
Santa Rosa, CA  95403-8935
_____/


## DEFENDANTS O'CONNOR AND FELT SR'S MOTION TO STAY ACTION PENDING ARBITRATION AND MOTION TO TRANSFER VENUE (HEARING REQUESTED)
9 U.S.C. § 3; 28 U.S.C. § 1404(a)

**COME NOW** defendants JOHN D. O'CONNOR and WILLIAM MARK FELT, SR. ("Felt

Sr.") and move this court for (1) an order to stay all further proceedings in this case pending

arbitration pursuant to 9 U.S.C. § 3 on the ground that the parties hereto agreed in writing that the

issues raised in this action would be arbitrated and that any and all claims against moving parties are

inextricably intertwined; and, (2) an order transferring venue to the United States District Court for

the Northern District of California pursuant to 28 U.S.C. §1404(a).

**Defendants O'Connor and Felt Sr. respectfully request a hearing on these motions.**

This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities and the Declaration of John D. O'Connor filed herewith, the pleadings, records and files in this action, and upon such other and further oral and documentary evidence as may be admitted at the hearing on this motion.

Dated: *August 31, 2006*

                                JOHN D. O'CONNOR
                                WILLIAM MARK FELT, SR.
                                By Counsel

Kerrie L. Hook, Esq.  (DC Bar No. . 421289)
**KELLEY DRYE COLLIER SHANNON**
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C.  20007-5108
Telephone:    (202) 342-8400
Facsimile:    (202) 342-8451

Attorneys for Defendant
JOHN D. O'CONNOR and
WILLIAM MARK FELT, SR.

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

RALPH DE TOLEDANO, an individual,     Case No.   1:06CV01214 JDB
500 25th St., N.W., No. 1010
Washington, D.C. 20037

     Plaintiff

     v.

John D. O'Connor, Esq.
287 Makin Grade
Kentfield, CA 94904

William Mark Felt, Jr.
12702 N.W. 2th Court
Coral Springs, FL 33071-7754

William Mark Felt, Sr.
2309 Redford Place
Santa Rosa, CA 95403-8935
_____/

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS JOHN D. O'CONNOR AND WILLIAM MARK FELT SR.'S MOTION TO STAY ACTION PENDING ARBITRATION AND MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))

     This is an ordinary, commercial dispute arising out of the Agreement to Assign Copyright

(the "Agreement") between plaintiff and defendants William Mark Felt, Sr. ("Felt Sr.") and William

Mark Felt, Jr. (collectively, "defendants Felt".) The Agreement contains a clear, conspicuous, and

unambiguous provision for arbitration of disputes before JAMS/ENDISPUTE of San Francisco,

California. In addition, the interests of justice, and the parties favor transfer to the Northern District

of California. Accordingly, Defendants O'Connor and Felt Sr. move the court for a stay pending

arbitration pursuant to the Federal Arbitration Act (9 U.S.C. § 3) and for transfer of venue to the United States District Court for the Northern District of California for the reasons stated below.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANTS O'CONNOR AND FELT SR.'S MOTION**
**TO STAY ACTION PENDING ARBITRATION (9 U.S.C. § 3)**

**I.     INTRODUCTORY STATEMENT**

This is a dispute regarding the extent of rights conferred among the parties under a commercial contract for assignment of copyright interests. The Agreement is a very straight forward, two (2) page Agreement with a one page Exhibit in 12 point font, with a minimal amount of legal verbiage. (*See*, Exhibit 7 to Declaration of John D. O'Connor ["O'Connor Decl." filed with this Motion)   The terms and conditions of the agreement were not hidden from plaintiff who acknowledges that he was aware of the general terms including but not limited to:

(1)     the nature of the rights being transferred (*See*, Complaint ¶¶8, 9 and 14);

(2)     the consideration to be paid to plaintiff for his rights (*See*, Complaint ¶16); and,

(3)     the presence of an arbitration clause in the agreement (*See*, Complaint ¶15).

Further, plaintiff acknowledges that he executed and returned the contract (*See*, Complaint ¶17) and that he was ultimately accepted the consideration paid for the rights conferred by the agreement. (Complaint ¶¶19 and 22; *See*, O'Connor Decl. ¶9.)

The written contract which is the subject of this dispute provides in pertinent part:

"7. Arbitration

Should there arise any dispute under this Agreement, or in any way related to the subject matter of this Agreement, the parties agree to a confidential arbitration before a single arbitrator before JAMS/ENDISPUTE, San Francisco, California, under its applicable rules for arbitration. The Arbitrator hereunder shall decide any questions of venue or location for hearing, deposition, or the taking of any evidence.

**MPA IN SUPPORT OF O'CONNOR & FELT SR.'S MTNS FOR STAY PENDING ARBITRATION AND TRANSFER VENUE**

> All arbitration proceedings shall be kept strictly confidential." (*See*, O'Connor Decl., Exhibit 7.)

This provision is clear and unequivocal, stated in plain language, and manifestly fair to the parties. It provides that the arbitrator may decide issues of venue and locations for discovery which would permit the parties to address any hardship issues relating to the physical distance and physical condition of the respective parties to the agreement.

Pursuant to the terms of the contract, defendants have initiated arbitration proceedings before JAMS/ENDISPUTE, San Francisco, California; however, plaintiff declined to participate and, instead, subsequently filed this action. (*See*, O'Connor Decl., ¶11, Exs. 10 and 11.) Defendants O'Connor and Felt Sr. move this court for a stay of this action to permit the arbitration to proceed pursuant to 9 U.S.C. § 3.

## II.    PLAINTIFF'S COMPLAINT RAISES NO ISSUES WHICH SHOULD OVERCOME THE STRONG FEDERAL INTEREST IN ARBITRATION

Section 3 of the Federal Arbitration Act (*9 United States Code*) ("FAA") provides:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

The Supreme Court has consistently ruled in favor of arbitration under the FAA where a written contract involving the parties and the issues contains an arbitration clause. For example, the Supreme Court unanimously held that actions involving a mix of arbitrable and non-arbitrable claims should be arbitrated under the FAA. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217; 105

S.Ct. 1238, 1241(1985). Plaintiff's complaint raises no issues or considerations which should deny the parties the right and duty to arbitrate their dispute in accordance with the agreement.

Regarding the court's standard for determining arbitrability, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (U.S. 1985) teaches:

> [T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital*, 460 U.S., at 24. See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400-404 (1967); *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984). And that body of law counsels

> "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital*, 460 U.S., at 24-25.

It is undisputed that there was a written agreement encompassing the issues in this action and that the agreement contained an arbitration provision. The entire agreement is only a few pages long and the arbitration provision was clearly labeled and stated in a straightforward manner. The court is requested to stay these proceedings to permit the parties to arbitrate their dispute in accordance with the Agreement.

Despite the clarity of the arbitration provision and plaintiff's acceptance of the benefits of the contract, plaintiff raises five primary issues in the Complaint which he may claim affect his contractual obligation to arbitrate this dispute: (a) that he was fraudulently induced to enter into the contract; (b) that he was fraudulently induced to accept the arbitration provision; ( c ) that defendants did not sign the contract; (d) that defendant O'Connor was not a party to the contract; and, (e) that the

contract was revoked and therefore unenforceable. None of these potential issues vitiate plaintiff's obligation to submit this matter to arbitration and this court is requested to stay this action to permit arbitration to proceed in accordance with the contract and the FAA.

###### A.    Claims of Fraudulent Inducement Relating to the Entire Contract Are within the Scope of the Arbitration Clause

Plaintiff broadly alleges that he was induced to enter into the *Agreement to Assign Copyright* by defendants' failure to disclose material facts about Mr. Felt and defendants' intentions regarding use of the copyrighted material. Even assuming that plaintiff could prevail on that claim, it is not exempt from arbitration under the FAA. *Prima Paint Corp. v. Flood & Conklin Mfg. Corp.*, 388 U.S. 395, 87 S.Ct. 1801 (1967). In *Prima Paint*, the Court held that a claim that a party was fraudulently induced to enter into the agreement as a whole was arbitrable within the broad scope of and subject to an arbitration provision under the FAA. The arbitration clause in *Prima Paint* provided, "[A]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association . . . ." This language is substantially identical to the clause involved in this action and this action must be stayed to permit arbitration including plaintiff's fraud claims as required by the written contract. *See also, Buckeye Check Cashing, Inc. v. Cardegna*, ___ U.S. ___, 126 S.Ct. 1204 (2006).

###### B.    There is No Substantial Evidence that the Arbitration Provision in the Contract Was Procured by Fraud or Is Unconscionable

Although a claim that the arbitration provision, itself, was procured by fraud must be resolved by the court (*Prima Paint Corp. v. Flood & Conklin Mfg. Corp., supra*, 388 U.S. 395), there is no substantial evidence of any such fraudulent procurement of the arbitration provision in the

Agreement. Plaintiff's complaint does **NOT** allege that he was unaware of the arbitration clause or that defendants ever represented that the arbitration provision would not be invoked in the event of a dispute. Quite to the contrary, plaintiff specifically alleges that he was told that disputes regarding rights under the contract would be arbitrated. (Complaint, ¶15; O'Connor Decl. ¶8). Further in prior discussions, deToledano's attorney never claimed that there was fraud in the procurement of the arbitration provision, itself. (O'Connor Decl., ¶10.)

Further, plaintiff's allegations that the arbitration provision is necessarily unfair is not supported by the terms of the agreement. Although the provision identifies JAMS/ENDISPUTE as the arbitration provider, it specifically leaves issues regarding venue, location and discovery to the discretion of the arbitrator who may consider all of the issues raised by plaintiff when rendering his or her decision. In the long run, the arbitration process is most likely to result in a net reduction in total litigation costs and result in a much quicker resolution. Modern technology may also provide additional means to mitigate the burden of cross-country litigation including video conferencing, electronic document exchanges, and the like.

C.    **Defendants' Failure to Execute the Agreement Does Not Invalidate the Arbitration Provision of the Contract**

Defendants anticipate that plaintiff will contest the application of the arbitration provision on the grounds that the contract was never actually executed by defendants prior to the filing of the complaint. The lack of signatures by defendants William Mark Felt, Jr. and William Mark Felt, Sr. on the contract does not alter the fact that the parties intended to provide for arbitration of disputes in this transaction nor render the arbitration provision unenforceable. *Nghiem v. NEC Electronic, Inc.* 23 F.3d 1437, 1438-1439 (9th Cir. 1994); *Genesco, Inc. v. T. Kakudi & Co.*, 815 F.2d 840, 846 (2nd Cir. 1986).

Under California law, California Civil Code § 3388 provides:

> "A party who has signed a written contract may be compelled specifically to perform it, though the other party has not signed it, if the latter has performed, or offers to perform it on his part, and the case is otherwise proper for enforcing specific performance."

This is precisely the situation facing the court by this motion. Plaintiff signed the simple, 2-page agreement with a 1-page Exhibit and defendants have paid (and plaintiff has received) all consideration and other performance due from defendants under the contract. Plaintiff should not now be permitted to repudiate his consent and agreement to the arbitration provision of the contract. The court is requested to grant this motion to stay further proceedings in this court pending resolution of arbitration under the contract and pursuant to the FAA.

**D.     Plaintiff's Claims Against Defendant O'Connor Are Included within the Scope of the Arbitration Provision and Must Be Arbitrated Pursuant to the FAA**

Defendants anticipate that plaintiff will seek to evade his obligation to arbitrate this dispute as against Defendant O'Connor by claiming that O'Connor was not a party to the Agreement; however, defendant O'Connor was at all times acting as the disclosed agent of defendants Felt, (O'Connor Decl., ¶22.) Plaintiff's claims against O'Connor are inextricably intertwined with his claims against defendants Felt and must be submitted to arbitration together. *Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993). Further, even if some claims against O'Connor are arguably severable from the remaining claims, the resolution of the arbitrable claims would necessarily have a determinative effect on the remaining claims and equity demands that all claims be submitted to arbitration. *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000).

### E.    Plaintiff's Acceptance of the Benefits of the Contract Constitutes Continued Consent to Arbitrate

Plaintiff alleges that he revoked the contract based upon the failure of defendants Felt to pay him the first $5,000 within the time as provided in the Agreement to Assign Copyright. Despite this claim, plaintiff acknowledges and admits that he ultimately accepted payment of the $5,000 consideration to secure assignment of the copyright under the Agreement in February 2005 and the remaining $5,000 due under the Agreement in May 2005. Plaintiff neither returned these payments nor repudiated the Agreement at that time. By making these payments, defendants fully performed their obligations under the Agreement and plaintiff must not now be permitted to selectively repudiate his obligation to submit this dispute to arbitration.

In summary, the *Agreement to Assign Copyright* signed by plaintiff and performed by defendants Felt clearly and unequivocally requires arbitration of disputes arising under that agreement including questions of venue, location, and discovery. Plaintiff agreed to the terms and accepted the benefits of the Agreement. Defendants O'CONNOR and FELT SR. respectfully request this court to stay the present action in favor of arbitration under the Agreement pursuant to 9 U.S.C. § 3.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE TO USDC FOR THE NORTHERN DISTRICT OF CALIFORNIA, PURSUANT TO 28 U.S.C. § 1404(a)

In addition to the motion to stay this action pending arbitration, O'Connor and Felt Sr. also move the Court for an order transferring venue of this action to the United States District Court for the Northern District of California ("Northern District California") for the convenience of parties and witnesses and in the interests of justice, pursuant to 28 U.S.C. Section 1404(a).

III.    **28 U.S.C. SECTION 1404(A) ALLOWS TRANSFER TO THE NORTHERN DISTRICT CALIFORNIA**

28 U.S.C. Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

It is clear that plaintiff's complaint *might have been brought* in the Northern District California.

Since plaintiff's complaint invokes both diversity and federal question jurisdiction (Complaint, para. 2), venue is governed by the rules in federal question cases. *Macon Grocery Company v. Atlantic Coastline Railroad*, 215 U.S. 501, 507-508 (1910). Under the venue rules for federal question cases, venue is available in the Northern District California because that is where "a substantial part of the events or [alleged] omissions giving rise to the claim occurred", and, independently, because that is where "any defendant may be found". 28 U.S.C. Section 1391(b)(2) and (b)(3). Both defendant Felt Sr. and defendant O'Connor currently live in Northern California, that is where both resided at all times during the negotiations with plaintiff, that is where O'Connor drafted the Agreement, that is where O'Connor drafted his letters to plaintiff, that is where plaintiff sent his letters to O'Connor, and that is where the checks were drawn and sent. (O'Connor Declaration, ¶¶ 14 and 17.)

IV.    **THE ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT CALIFORNIA FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES AND THE INTERESTS OF JUSTICE**

Numerous factors warrant transferring venue of this action to the Northern District California.

### A.    Convenience of Parties

Defendant Felt, Sr. is a 93 year old man in ill health who lives with his daughter Joan Felt in Santa Rosa, California, located approximately 50 miles from San Francisco. His ill health does not permit him to drive a car, fly on a plane, or travel for any significant distance. Most of his days are spent simply resting at his daughter's home. It would be impossible for him to travel to Washington D.C. (O'Connor Decl., ¶¶ 12, 13, 14 and 18.)

Defendant O'Connor lives in Kentfield, California located approximately 20 miles from San Francisco. He is now a sole practitioner attorney with his office in San Francisco. Although O'Connor can travel, his current law practice would not permit him to be away in Washington D.C. for extended periods of time. (O'Connor Decl., ¶¶ 2 and 14.)

Defendant Felt, Jr. lives in Florida and returns to California to visit his mother, grandfather, and other family members. He has no family or business connections in Washington D.C. and no other reason to visit there. (O'Connor Decl., ¶ 19.)

Clearly, for three of the four parties in the action, it would be much more convenient if this matter were transferred to the Northern District California. In defendant Felt, Sr.'s case, if this action remained in Washington D.C., he simply would not even be able to participate. The only party for whom it would be less convenient is plaintiff, but at least he is apparently in better health and can travel.

### B.    Convenience Of Witnesses

Defendants Felt, Sr., Felt, Jr. and O'Connor are all witnesses in the action and, as set forth above, it would be much more convenient for them, and essential for Felt, Sr., to have this action transferred to the Northern District California.

One non-party witness will be Joan Felt (Felt, Sr.'s daughter) who lives in Santa Rosa, California, who works as a teacher at a local college, and cannot be absent for multiple days during the school year. She is expected to testify about the facts and circumstances surrounding the decision to disclose the identity of "Deep Throat" and about the family's knowledge of and involvement in the negotiations with plaintiff. She also arranged for part of one of the $5,000 payments to plaintiff. (O'Connor Decl., ¶¶ 16 and 20.) It would be much more convenient for her to have this action transferred to the Northern District California.

Other non-party witnesses will be the representatives of Creative Artists Agency Association which is the agent for the Felt family that performed services for the Felts in negotiating the book and movie contract. Creative Artists Agency is located in Los Angeles, California and all the representatives who would testify live and work in Southern California. The representatives would testify about issues related to the negotiations and the alleged damages in the action. (O'Connor Decl., ¶21.) It would be much more convenient for them to have this action transferred to the Northern District California.

Additional non-party witnesses are the representatives of Universal Studios which is the studio that acquired the rights to the life stories of the three defendants and other members of the Felt family. Universal Studios is also located in Los Angeles and all the representatives who would be called to testify live and work in Southern California. The representatives would testify about the alleged damages issues in the action, including apportionment. (O'Connor Decl., ¶21.) It would be much more convenient for them to have this action transferred to the Northern District California.

Having this action transferred to the Northern District California would clearly be more convenient for all the presently considered non-party witnesses in the action.

C.    **Judicial Economy**

This is a factor that is to be considered in deciding a motion to transfer under 28 U.S.C. § 1404(a). *Van Dusen v. Barrack*, 376 US 612, 616 (1964). Here, to the extent that the Arbitrator at JAMS/ENDISPUTE San Francisco determines that the venue for the arbitration should be in San Francisco, it would assist judicial economy for this action to be venued in the Northern District of California. If and when it becomes time for the parties to challenge, confirm or enforce the arbitration award, it would be more efficient and economical for the parties with their voluminous files to proceed almost just across the street to the courthouse, rather than across the country.

D.    **Ease Of Access To Proof And Availability Of Compulsory Process**

These are additional factors to be considered in deciding a motion to transfer under 28 U.S.C. § 1404(a). Van Dusen, *supra*, at p. 643; *Reed v. Fine Oil & Chemical Company*, 995 F. Supp. 705, 714 (ED TX 1998). In this action, the parties and their attorneys would have greater ease of access to proof if the action was transferred to the Northern District California. As mentioned above, virtually all of the witnesses but one live in California or visit there regularly. The documentary evidence such as the agreements with the agents and studios, payments, distribution plans, royalties, and the like would all be located in California. It would be easier for all parties to acquire that information with a subpoena issued from a California Arbitrator or California Court and, if the requested documents and information was not produced, it would be easier to enforce the subpoena in a California court. The situation is likewise with respect to any witness that would have to be subpoenaed.

### E.    Enforcement Of Plaintiff's Requested Injunctive Relief

Whether injunctive relief is sought and, if so, which court is closer to the action and better able to monitor compliance should also be considered. *Law Bulletin Publishing Company v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1020-1021 (ND IL 1998). In the complaint, plaintiff has requested injunctive relief against alleged copyright infringement by defendants. (*See* Complaint, Prayer, Item 5.) Assuming arguendo plaintiff were to prevail on his claim and be awarded injunctive relief as requested, the Northern District California court would be better able to monitor compliance with any injunction that may be granted since the literary and movie entities are located in southern California and any book and movie royalties would be paid by the entities in southern California.

In summary, the weight of applicable factors under 28 U.S.C. § 1404(a) strongly favors transfer of this action from the United States District Court for the District of Columbia to the United States District Court for the Northern District of California, and this court should so exercise its discretion.

### V.    CONCLUSION

The arbitration provision in the Agreement to Assign Copyright was clearly known to plaintiff and accepted at the time he signed the Agreement. There is no substantial evidence which would justify disregarding this contractual obligation especially in light of the Supreme Court's instruction that the Federal Arbitration Act strongly favors arbitration of contractual disputes. Regardless of whether or where this matter is ultimately arbitrated, the comparative burdens on the parties, and the interests of justice militate in favor of transferring this action from the District of Columbia to the Northern District of California. For all of the foregoing reasons, Defendants O'CONNOR and FELT SR. respectfully request this court to grant their motions to (1) stay this

action pending arbitration; and, (2) transfer this action to the Northern District of California for all

further proceedings.

Dated: _August 31, 2006_

               JOHN D. O'CONNOR
               WILLIAM MARK FELT, SR.
               By Counsel

Kerrie L. Hook, Esq.  (DC Bar No. 421289)
**KELLEY DRYE COLLIER SHANNON**
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C.  20007-5108
Telephone:    (202) 342-8400
Facsimile:    (202) 342-8451

Attorneys for Defendant
JOHN D. O'CONNOR and
WILLIAM MARK FELT, SR.

**MPA IN SUPPORT OF O'CONNOR & FELT SR.'S MTNS FOR STAY PENDING ARBITRATION AND TRANSFER VENUE**

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

RALPH DE TOLEDANO, an individual,       Case No.   1:06CV01214 JDB
500 25th St., N.W., No. 1010
Washington, D.C.  20037

      Plaintiff

        v.

John D. O'Connor, Esq.
287 Makin Grade
Kentfield, CA 94904

William Mark Felt, Jr.
12702 N.W. 2th Court
Coral Springs, FL  33071-7754

William Mark Felt, Sr.
2309 Redford Place
Santa Rosa, CA 95403-8935
_____/

## DECLARATION OF JOHN D. O'CONNOR IN SUPPORT OF MOTION TO STAY ACTION PENDING ARBITRATION AND MOTION TO TRANSFER VENUE
### 9 U.S.C. §3; 28 U.S.C. §1404(a)

I, John D. O'Connor declare that:

    1.     I am an attorney duly licensed to practice law in all courts in the State of California.  I

have personal knowledge of the matters set forth herein except as to matters stated on information

and belief and, as to those matters, I am informed and believe they are true and correct.

    2.     I reside in Kentfield, California which is located approximately 20 miles from San

Francisco, California.  While I was formerly with the Howard, Rice law firm in San Francisco, on

June 30, 2006, I left Howard Rice and opened up my own sole practitioner law office in San

Francisco. Because of the demands of my law practice and my sole practitioner status, it would be very difficult for me to be gone from my office for any extended period of time, such as would be required if this case were litigated in Washington, D.C.

      3.     Attached hereto as the following exhibit numbers are true and correct copies of the following documents:

| **Exhibit** | **Document** |
| --- | --- |
| 1 | May 9, 2003 correspondence from John O'Connor to Ralph deToledano, with initial Agreement and Assignment attached |
| 2 | May 9, 2003 correspondence from John O'Connor to Ralph deToledano enclosing another copy of the proposed Agreement and Assignment |
| 3 | May 27, 2003 correspondence from Ralph deToledano to John O'Connor |
| 4 | September 2, 2003 correspondence from John O'Connor to Ralph deToledano |
| 5 | September 7, 2003 correspondence from Ralph deToledano to John O'Connor |
| 6 | October 27, 2003 correspondence from John O'Connor to Ralph deToledano, with Final Agreement and Assignment attached |
| 7 | Agreement and Assignment both executed by Ralph deToledano on November 4, 2003 |
| 8 | December 6, 2003 correspondence from Ralph deToledano to John D. O'Connor |
| 9 | December 15, 2003 correspondence from John O'Connor to Ralph deToledano |
| 10 | May 10, 2006 Demand for Arbitration |
| 11 | June 27, 2006    JAMS Notice of Commencement of Arbitration |

4.      The Agreement and Assignment that was signed by Mr. deToledano was drafted by me in a way intended to be simple, straightforward and easily read.  The negotiations for this particular Agreement, calling for an initial payment of $5,000 to Mr. deToledano, were all in writing, commencing with Exhibit 4,  my September 2, 2003 correspondence to Mr. deToledano, outlining the terms of the proposed contract.

5.      On September 7, 2003 Mr. deToledano responded in writing accepting the terms. We did not speak in the interim between the two pieces of correspondence, nor did we speak between September 7, 2003, when he accepted the offer, and October 27, 2003 when I wrote him correspondence enclosing the Final Agreement and Assignment.

6.      Prior to September 2, 2003, I had never offered or suggested to Mr. deToledano paying him $5,000 or any other fixed amount.  The September 2, 2003 correspondence, Exhibit 4,  is the first set of communications suggesting the payment of dollars as opposed to a percentage. Additionally, no further communications were had between the two of us between October 27, 2003 and November 4, 2003 when Mr. deToledano returned the accepted Agreement and Assignment.

7.      Accordingly, during the negotiations for this Agreement, neither party discussed or communicated regarding the arbitration clause.

8.      I did talk to Mr. deToledano once, after his May 27, 2003 correspondence, attached as Exhibit 3, in which he refused the written Agreement which called for varying percentages.  At one point, I mentioned that if there were disagreements about whether the 10% or 33% was applicable, the arbitration clause would resolve any disputes.  Other than that, there was no communication whatsoever orally regarding the arbitration clause, but in that conversation, I did point out the existence of the clause, and Mr. deToledano acknowledged that he knew there was an arbitration

clause in the proposed Agreement.

9.      Mr. deToledano was sent the first $5,000 in February 2005, and the second $5,000 in May 2005. He cashed the checks totaling $10,000 without objection or limitation and has never returned the money.

10.     Since December of 2005, I had engaged in discussions with Mr. Brian Deboice of the firm of Cohn & Marks in Washington, D.C. about Mr. deToledano's claims against the Felts. While Mr. Deboice claimed there was fraud in the procurement of the contract, in essence on the grounds that we did not inform Mr. deToledano that Mr. Felt was "Deep Throat", he at no time claimed that there was fraud in the procurement of the arbitration clause itself. Mr. Deboice expressed the view that a claim of fraud in the inducement to the contract as a whole was sufficient to take the matter out of arbitration.

11.     Knowing that there was a real and live dispute between the parties on these claims, we instituted Arbitration Proceedings before JAMS, San Francisco on May 10, 2005 (Exhibit 10). After addressing issues of administrative non-compliance, JAMS declared the arbitration commenced as of June 27, 2005, before the instant action was filed (Exhibit 11). I am a solo practitioner in San Francisco, California and have a been a *pro bono* counsel to Mr. Mark Felt, Sr. since April of 2002.

12.     Mr. Felt is 93 years of age, needs the assistance of a "walker" to ambulate, and needs human assistance for many activities of daily life, including getting out of bed, dressing, getting into an automobile and the like. He has experienced several life-endangering episodes in the last 4 years that appeared to have begun with a mild fever and fatigue and/or trauma stemming from a minor fall.

13.     For the past 15 months, I and the family have refused all requests by media and other organizations to have Mr. Felt fly on an airplane flight of any length, including short flights within California, on the grounds that it would be threatening to his health. We would certainly take the same position regarding any possible flight to Washington, D.C.

14.     I live in Marin County, California within 20 miles of both JAMS and the United States District Courthouse, and Mr. Felt lives in Santa Rosa, California, approximately 50 miles from each of these places. He is capable of being driven with an attendant to these locations.

15.     In this case, damages sought by the plaintiff would involve apportionment of proceeds from any movie involving Mr. Felt's licensing of his life story. For the last 15 months we have been in discussions with a movie studio in Southern California about the sale of the movie rights of Mr. Felt's life story, which would also involve among other rights, rights to use The FBI Pyramid, the 1979 work of Mr. Felt assisted by Mr. deToledano; and also to use G-Man's Life, a recent book incorporating passages from the FBI Pyramid and other writings. Additionally, the movie rights would involve the life stories of five individuals Mr. Felt, Sr., Mark Felt, Jr., Joan Felt (the daughter of Mr. Felt, Sr.), Nicholas Jones (Mr. Felt's Grandson), and me, as well granting rights to any writings, papers and the like.

16.     Of these five parties, four of them, Mr. Felt, Joan Felt, Nicholas Jones and I, live in Northern California. The fifth, Mr. Felt, Jr., lives in Florida. The various movie studio executives, lawyers, agents and negotiators for the movie all live in Southern California.

17.     At all times, Northern California has been the residence of the four of us named above. Northern California is where I resided when I had negotiations with the plaintiff, when I drafted the Agreement, Northern California is where I drafted letters to plaintiff, and where plaintiff sent me letters in return. The checks I sent to Mr. deToledano in fulfillment of his contract were all

sent from Northern California.

18.    It would be impossible for Mr. Felt to travel to Washington, D.C., and it would be extremely inconvenient for me as a sole practitioner.

19.    Mr. Felt, Jr. presently resides in Florida and is recovering from serious cancer. When he is able, he has often visited Northern California to visit family members, including his father. I have no knowledge that Mr. Felt, Jr. has any family or business connections in Washington, D.C.

20.    Ms. Joan Felt, the daughter of Mr. Felt, Sr., is an extremely busy college instructor, teaching at both a junior college and a regular college in addition to being a regular tutor. Ms. Felt arranged for parts for one of the $5,000 payments to plaintiff, is a witness to the knowledge of her father about his role as "Deep Throat", and has been actively involved in the movie and book negotiations.

21.    The agents for the family, Ms. Sally Wilcox and Eileen Rapke of CAA, Creative Artist Agency, live in Southern California and have performed services for the Felts in negotiating the movie contract. The Agency itself is located in Santa Monica. The negotiator for Universal Studios, Ms. Grace Torpoco, works out of the studio offices in Los Angeles, California. Ms. Wilcox, Ms. Rapke and Ms. Torpoco would testify about proportioning damages as between and among the FBI Pyramid, G-Man's Life, my Vanity Fair article, other notes and writings of Mr. Felt and the various life rights and consultations that the family members and I are to provide Universal Studios, and the relative value they have played in procuring the tentative movie contract. The presently assigned writer, Mr. Peter Landesman, lives in Venice Beach, California, and Mr. Jay Roach, the assigned director, lives in Los Angeles, and both would also be witnesses regarding damages. It would be much more convenient for the Southern California witnesses to have the proceedings take place within the State of California.

22. I at all times negotiating this Agreement was acting only as an agent and not a principal, and therefore consider this action against me to be within the arbitration clause. During the negotiations I was not planning or discussing writing any book or article myself. When I did later write an article for Vanity Fair, I did so as *pro bono* counsel, and gave the modest proceeds to the Felts to defray their expenses in this project.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: 8/31/2006

_____
JOHN D. O'CONNOR

_____
KERRIE L. HOOK (DC Bar No. 421289)
**KELLEY DRYE COLLIER SHANNON**
3050 K Street, NW, Suite 400
Washington, DC 20007-5108
Telephone: (202) 342-8890
Facsimile: (202) 342-8451

Attorneys for Defendant
JOHN D. O'CONNOR and
WILLIAM MARK FELT, SR.

# EXHIBIT 1

_15295.01 A101

*Law Offices Of*

# HOWARD
## RICE
### NEMEROVSKI
### CANADY
### FALK
### & RABKIN

---
*A Professional Corporation*

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4065
Telephone 415.434.1600
Facsimile 415.217.5910
*www.howardrice.com*

Writer's Information:

John D. O'Connor
Direct: 415.765.4676
*joconnor@hrice.com*

May 9, 2003

**VIA FEDERAL EXPRESS**

Ralph deToledano
500 23rd Street NW, Apt. 1010
Washington, DC 20037

Dear Mr. deToledano:

Please find a revised version of the Agreement to Assign Copyright.

We recognize that some publishers may wish to hire a ghost writer at great expense and, as well, may want to "write around" any previously published work. Under the revised Agreement, even if that were to occur, you would receive 10% of all the royalties and related income. Of course, if the parties disagreed as to whether the final version entitled you to 10% or 33%, either party would have the right to go to arbitration.

We think you will agree that this revised Agreement is extremely fair, and we look forward to your execution of it as well as the Assignment, and returning it in the enclosed self-addressed envelope.

We look forward to concluding this matter with you.

Very truly yours,

JOHN D. O'CONNOR

JDO/jgb
Enclosure

# AGREEMENT TO ASSIGN COPYRIGHT

### Agreement

1.    <u>Parties.</u>

    This Agreement is made between Ralph deToledano, the party of the first part ("RDT"); and W. Mark Felt, Sr. ("WMF") and W. Mark Felt, Jr. ("WMF2"), collectively the party of the second part, referred to herein as "Felt".

2.    <u>Copyright Registration and Ownership.</u>

    RDT and WMF are each listed as an author on Certificate of Copyright Registration 405-597, effective date February 4, 1980, of a work entitled THE FBI PYRAMID FROM THE INSIDE by Mark Felt ("The Work").

3.    <u>Purpose of Agreement</u>

    Felt wishes to write and/or publish a book concerning the life and career of WMF ("Book"). Felt may incorporate aspects of The Work into any such Book, and therefor wishes to obtain full ownership of the Copyright to The Work and avoid any possible dispute over claims of copyright infringement, or any and all other claims, related to The Work.

4.    <u>Assignment of Copyright.</u>

    In consideration of and for the Payments hereunder, RTD agrees to assign and transfer to Felt any and all right, title and interest in and to the aforesaid copyright of and for The Work, without any qualification or limitation, through an Assignment in the form attached hereto as Exhibit "A". RTD also agrees to execute as reasonably necessary any additional paperwork required to effectuate the transfer of all right, title and interest in the copyright.

5.    <u>Payments.</u>

    In consideration of and for the above Assignment, Felt agrees to pay RDT an amount equal to 33 1/3% of any Net Royalty Payments received by Felt for the publication of the Book in electronic and/or written form in any way incorporating any substantial wording from The Work. "Net Royalty Payments" shall mean and include any and designated royalty payments received from any entity relative to the publication of the Book, less any legal costs, fees and expenses incurred in conjunction therewith. Additionally, Felt agrees to pay RTD an amount equal to ten percent of any Net Related Income, which shall mean and include any fees received for personal appearances, interviews ancillary work,

ghost writing or editing, or any fees for services for activities incidental to the publication of any Book, but which do not involve the receipt of royalties. Additionally, even if the Book incorporates no substantial wording from The Work, Felt shall pay RTD an amount equal to ten percent of the royalties received from the Book.

     6.   <u>Notices.</u>

     All notices hereunder shall be sent to the following addresses, or such other address as may be changed or added by written notice under this paragraph:

     For Felt: John D. O'Connor, Esq.
     Howard, Rice, Nemerovski, Canady, Falk & Rabkin
     Three Embarcadero Center, Seventh Floor
     San Francisco, California 94111

     For RDT: Mr. Ralph deToledano
     500 23rd Street NW, Apt. 1010
     Washington, D.C. 20037

     7.   <u>Timing of Payment.</u>

     Any payment due hereunder to RDT shall be made by Felt within 30 days of receipt of any payment by Felt.

     8.   <u>Report and Reconciliation</u>

     Not less frequently than each quarter, on the dates of January 1, April 1, July 1, and October 1 of any year, Felt shall provide RTD with a Report and Reconciliation detailing all payments received hereunder by Felt and any and all payments made to RTD or due and owing to RDT.

     9.   <u>Arbitration.</u>

     Should there arise any dispute under this Agreement, or in any way related to the subject matter of this Agreement, the parties agree to a confidential arbitration before a single arbitrator before JAMS/ENDISPUTE, San Francisco, California, under its applicable rules for arbitration. The Arbitrator hereunder shall decide any questions of venue or location for hearing, deposition, or the

taking of any evidence. All arbitration proceedings shall be kept strictly confidential.

IT IS SO AGREED:

DATED:_____        _____

                               Ralph deToldano


DATED_____         _____

                               W. Mark Felt, Sr.


DATED_____         _____

                               W. Mark Felt, Jr.

## ASSIGNMENT OF COPYRIGHT

   For valuable consideration the receipt whereof is hereby acknowledged, Mr. Ralph deToledano, ("Assignor") an individual residing in the District of Columbia, hereby grants and assigns to W. Mark Felt, Sr. ("Assignee") all of his right, title and interest to and in Assignor's copyright registered February 4, 1980 in the Copyright Office of the United States by Registration No. 405-597.


DATED: _____          _____

                    RALPH deTOLEDANO

WD 050903/1-1529501/62/1073855/v1


EXHIBIT "A"

# EXHIBIT 2

*Law Offices Of*

# HOWARD
# RICE
# NEMEROVSKI
# CANADY
# FALK
# & RABKIN

*A Professional Corporation*

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4065

Telephone 415.434.1600
Facsimile 415.217.5910
*www.howardrice.com*

Writer's Information:

John D. O'Connor
Direct: 415.765.4676
*joconnor@hrice.com*

May 9, 2003

**VIA FEDERAL EXPRESS**

Ralph deToledano
500 23rd Street NW, Apt. 1010
Washington, DC 20037

Dear Mr. deToledano:

Here is another copy of the proposed Agreement and Assignment. Please execute and return in the enclosed envelope.

We look forward to concluding this matter with you.

Very truly yours,

JOHN D. O'CONNOR

JDO/jgb
Enclosure

# AGREEMENT TO ASSIGN COPYRIGHT

## Agreement

1. <u>Parties.</u>

   This Agreement is made between Ralph deToledano, the party of the first part ("RDT"); and W. Mark Felt, Sr. ("WMF") and W. Mark Felt, Jr. ("WMF2"), collectively the party of the second part, referred to herein as "Felt".

2. <u>Copyright Registration and Ownership.</u>

   RDT and WMF are each listed as an author on Certificate of Copyright Registration 405-597, effective date February 4, 1980, of a work entitled THE FBI PYRAMID FROM THE INSIDE by Mark Felt ("The Work").

3. <u>Purpose of Agreement</u>

   Felt wishes to write and/or publish a book concerning the life and career of WMF ("Book"). Felt may incorporate aspects of The Work into any such Book, and therefor wishes to obtain full ownership of the Copyright to The Work and avoid any possible dispute over claims of copyright infringement, or any and all other claims, related to The Work.

4. <u>Assignment of Copyright.</u>

   In consideration of and for the Payments hereunder, RTD agrees to assign and transfer to Felt any and all right, title and interest in and to the aforesaid copyright of and for The Work, without any qualification or limitation, through an Assignment in the form attached hereto as Exhibit "A". RTD also agrees to execute as reasonably necessary any additional paperwork required to effectuate the transfer of all right, title and interest in the copyright.

5. <u>Payments.</u>

   In consideration of and for the above Assignment, Felt agrees to pay RDT an amount equal to 33 1/3% of any Net Royalty Payments received by Felt for the publication of the Book in electronic and/or written form in any way incorporating any substantial wording from The Work. "Net Royalty Payments" shall mean and include any and designated royalty payments received from any entity relative to the publication of the Book, less any legal costs, fees and expenses incurred in conjunction therewith. Additionally, Felt agrees to pay RTD an amount equal to ten percent of any Net Related Income, which shall mean and include any fees received for personal appearances, interviews ancillary work,

-1-

ghost writing or editing, or any fees for services for activities incidental to the publication of any Book, but which do not involve the receipt of royalties. Additionally, even if the Book incorporates no substantial wording from The Work, Felt shall pay RTD an amount equal to ten percent of the royalties received from the Book.

     6.   <u>Notices.</u>

All notices hereunder shall be sent to the following addresses, or such other address as may be changed or added by written notice under this paragraph:

     For Felt:  John D. O'Connor, Esq.
     Howard, Rice, Nemerovski, Canady, Falk & Rabkin
     Three Embarcadero Center, Seventh Floor
     San Francisco, California 94111

     For RDT:  Mr. Ralph deToledano
     500 23rd Street NW, Apt. 1010
     Washington, D.C. 20037

     7.   <u>Timing of Payment.</u>

Any payment due hereunder to RDT shall be made by Felt within 30 days of receipt of any payment by Felt.

     8.   <u>Report and Reconciliation</u>

Not less frequently than each quarter, on the dates of January 1, April 1, July 1, and October 1 of any year, Felt shall provide RTD with a Report and Reconciliation detailing all payments received hereunder by Felt and any and all payments made to RTD or due and owing to RDT.

     9.   <u>Arbitration.</u>

Should there arise any dispute under this Agreement, or in any way related to the subject matter of this Agreement, the parties agree to a confidential arbitration before a single arbitrator before JAMS/ENDISPUTE, San Francisco, California, under its applicable rules for arbitration.  The Arbitrator hereunder shall decide any questions of venue or location for hearing, deposition, or the

-2-

taking of any evidence. All arbitration proceedings shall be kept strictly confidential.

IT IS SO AGREED:

DATED:_____          _____

                                      Ralph deToldano


DATED_____          _____

                                      W. Mark Felt, Sr.


DATED_____          _____

                                      W. Mark Felt, Jr.

-3-

## ASSIGNMENT OF COPYRIGHT

For valuable consideration the receipt whereof is hereby acknowledged, Mr. Ralph deToledano, ("Assignor") an individual residing in the District of Columbia, hereby grants and assigns to W. Mark Felt, Sr. ("Assignee") all of his right, title and interest to and in Assignor's copyright registered February 4, 1980 in the Copyright Office of the United States by Registration No. 405-597.

DATED: _____          _____

                                  RALPH deTOLEDANO

WD 050903/1-1529501/62/1073855/v1

**EXHIBIT "A"**

# EXHIBIT 3

**RALPH de TOLEDANO**                              *editor, author, columnist*
                          500 - 23rd Street N.W.  Washington, D.C.  2037

                                                        27 May 2003

John D. O'Connor, Esq.
Howard Rice Nemerovski
3 Embarcadero Center
San Francisco, CA  94111-4065

Dear Mr. O'Connor:

    The Agreement to Assign Copyright bears no resemblance to what I discussed with Mark Felt Jr. This may be because you are not aware of the history of *The FBI Pyramid.*

    When Walter Minton, publisher of G. P. Putnam', called me in, he said that the manuscript submitted by Mark Felt Sr.  was totally unpublishable. It included, he noted, very little of the FBI's activities or its organizational structure. In fact, he added, "It seems to be mostly his breakfast conversations with his wife."

    I was called in because I had covered the Bureau for many years, knew much of its history and had written a biography of J. Edgar Hoover. My re-write was so extensive that Minton suggested that I share the by-line. This upset Mark Sr., and I agreed instead to 50% of the royalties and copyright. .

    What Mark Jr. discussed was a re-publication of the book with perhaps some added material to be supplied by Mark Sr., with a three-way split of the royalties and copyright. On this basis, I offered to do any work on the new book that a publisher might require.

    The agreement which you were to draw up, I believed, would incorporate the above. What you submitted leaves me out, except for a possible 10% of royalties. I might add, that if a ghost writer is called in, his fee is paid by the publisher and is not deducted from the author's advance or royalties.

Sincerely yours,

RALPH de TOLEDANO

# EXHIBIT 4



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

*A Professional Corporation*

September 2, 2003

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.217.5910
*www.howardrice.com*

Writer's Information:

John D. O'Connor
Direct: 415.765.4676
*joconnor@howardrice.com*

**VIA FEDEX**

Ralph de Toledano
500 23rd Street N.W.
Washington, DC 20037

Re:     Mark Felt; FBI Pyramid

Dear Mr. de Toledano:

Sorry for the belated response to your letter that you sent some time ago about rights to the above book. It seems that in a family project like this it is easy to lose focus and attention.

Mark Jr. would still like to try to do a book. We think you probably misunderstood our last offer, which was that you got 10% if we did not use any of the copywrighted materials, but gave you the 33% if Mark Jr. used them. In any case, he understands why you would be upset, based upon that misunderstanding.

In any case, he suggests we do it even more simply. He would pay you $5,000 in cash for your share of the rights, plus $5,000 if he ever gets a book published. Please let us know what you think about that offer, which would make this whole thing much simpler.

Ralph de Toledano
September 2, 2003
Page 2

Please do not hesitate to call me at any time.

Sincerely,

John D. O'Connor

P.S.  Mark, Jr. would still like to consider you as a ghostwriter for an additional negotiated fee.

JDO/sem
WD 090203/1-1529501/1099462/v1

From: Sharon Mortz (415)434-1600
Howard, Rice, Nemerovski, Canady
3 Embarcadero Center
Suite 700
San Francisco, CA, 94111

REVENUE BARCODE



To: **Ralph de Toledano** (415)765-4673
editor, author, columnist
500 23rd Street NW

Washington, DC, DC, 20037

Ref: 15295.01

SHIP DATE: 02SEP03
WEIGHT: 1 LBS



DELIVERY ADDRESS BARCODE(FEDEX-804)

TRK # 7929 6080 6700

FedEx PRIORITY OVERNIGHT

20037-DC-US   XC DCAA

IAD

**WED**
A1
Deliver by:
**03SEP03**

---

## Shipping Label: Your shipment is complete

[ Cancel shipment ]  [ Edit shipment information ]  [ Process another shipment ]  [ Repeat last shipment ]

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other items of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT 5

**RALPH de TOLEDANO**                                    *editor, author, columnist*

500 - 23rd Street N.W.  Washington, D.C.  20037

7 September 2003

John D. O'Connor, Esq.
Howard, Rice, Nemerovski
3 Embarcadero Center
San Francisco, CA  94111

Dear Mr. O'Connor:

Thank you for yours of 2 September. I had been wondering whether the project had been scrubbed.

I accept Mark's proposal as outlined in your letter. As I understand it, he will pay me $5,000 in cash for my share of the rights in *The FBI Pyramid*, with an additional $5,000 if the revised edition is published. I presume that on receipt of my letter, you will draw up and send me a formal contract embodying his proposal.

You can assure Mark that I am ready to give any help needed towards the production of a revised MS. Is this means simply professional editing, any fee would be minimal. If it means incorporating additional material that Mark would provide, I am sure there will be no problem at arriving at an equitable arrangement. Anything greater than that would require Mark's presence for a collaborative effort in Washington.

Sincerely yours,

Ralph de Toledano

# EXHIBIT 6

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

*A Professional Corporation*

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.217.5910
*www.howardrice.com*

Writer's Information:
John D. O'Connor
Direct: 415.765.4676
*joconnor@howardrice.com*

October 27, 2003

VIA FEDEX

Ralph de Toledano
500 23rd Street N.W., Apt. 1010
Washington, DC 20037

      Re:   FBI Pyramid

Dear Mr. de Toledano:

      Please excuse the delay in our getting back to you.

      Enclosed is an Agreement to Assign Copyright and Assignment of Copyright for your execution. Please execute the Agreement and the Assignment, keeping copies for yourself, and send a signed copy of each in the enclosed self-addressed stamped envelope. We will forward you a check for $5,000 upon your execution of this contract, and after you have received that amount, you can then send us back an executed copy of the Assignment.

      We will let you know as soon as we obtain a publisher. Thank you in advance for your cooperation and patience.

      Sincerely,

      John D. O'Connor

JDO/sem
WD 102703/1-1529501/1110876/v1

# AGREEMENT TO ASSIGN COPYRIGHT

## Agreement

1. <u>Parties.</u>

This Agreement is made between Ralph deToledano, the party of the first part ("RDT"); and W. Mark Felt, Sr. ("WMF") and W. Mark Felt, Jr. ("WMF2"), collectively the party of the second part, referred to herein as "Felt".

2. <u>Copyright Registration and Ownership.</u>

RDT and WMF are each listed as an author on Certificate of Copyright Registration 405-597, effective date February 4, 1980, of a work entitled THE FBI PYRAMID FROM THE INSIDE by Mark Felt ("The Work").

3. <u>Purpose of Agreement</u>

Felt wishes to write and/or publish a book concerning the life and career of WMF ("Book"). Felt may incorporate aspects of The Work into any such Book, and therefor wishes to obtain full ownership of the Copyright to The Work and avoid any possible dispute over claims of copyright infringement, or any and all other claims, related to The Work.

4. <u>Assignment of Copyright.</u>

In consideration of and for the Payments hereunder, RTD agrees to assign and transfer to Felt any and all right, title and interest in and to the aforesaid copyright of and for The Work, without any qualification or limitation, through an Assignment in the form attached hereto as Exhibit "A". RTD also agrees to execute as reasonably necessary any additional paperwork required to effectuate the transfer of all right, title and interest in the copyright.

5. <u>Payments.</u>

Felt agrees to pay RTD $5,000, after which RTD will execute the Assignment, and after which payment Felt shall be sole and full owner of all such copyright. If at any time Felt or his assignees publish any work based upon said copyright, whether revised or otherwise, Felt shall pay RTD an additional $5,000 upon publication of said work. If Felt does not pay RTD this additional $5,000 within 30 days of publication, RTD is hereby granted a lien on an assignment of any payments or royalties therefrom. The payments described hereunder shall be the full amounts payable by Felt under this agreement.

6.    Notices.

All notices hereunder shall be sent to the following addresses, or such other address as may be changed or added by written notice under this paragraph:

For Felt:  John D. O'Connor, Esq.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin
Three Embarcadero Center, Seventh Floor
San Francisco, California 94111

For RDT:  Mr. Ralph deToledano
500 23rd Street NW, Apt. 1010
Washington, D.C. 20037

7.    Arbitration.

Should there arise any dispute under this Agreement, or in any way related to the subject matter of this Agreement, the parties agree to a confidential arbitration before a single arbitrator before JAMS/ENDISPUTE, San Francisco, California, under its applicable rules for arbitration.  The Arbitrator hereunder shall decide any questions of venue or location for hearing, deposition, or the taking of any evidence.  All arbitration proceedings shall be kept strictly confidential.

IT IS SO AGREED:

DATED:_____         _____
                                Ralph deToldano


DATED_____          _____
                                W. Mark Felt, Sr.


DATED_____          _____
                                W. Mark Felt, Jr.

## ASSIGNMENT OF COPYRIGHT

For valuable consideration the receipt whereof is hereby acknowledged, Mr. Ralph deToledano, ("Assignor") an individual residing in the District of Columbia, hereby grants and assigns to W. Mark Felt, Sr. ("Assignee") all of his right, title and interest to and in Assignor's copyright registered February 4, 1980 in the Copyright Office of the United States by Registration No. 405-597.

DATED: _____          _____

                                  RALPH deTOLEDANO

WD 050903/1-1529501/62/1073855/v1

EXHIBIT "A"

From: Sharon Mortz (415)434-1600
Howard, Rice, Nemerovski, Canady
3 Embarcadero Center
Suite 700
San Francisco, CA, 94111

REVENUE BARCODE



To: Ralph de Toledano (415)765-4673
editor, author, columnist
500 23rd Street NW
Apt. 1010
Washington, DC, DC, 20037

Ref: 15295.01

SHIP DATE: 27OCT03
WEIGHT: 1 LBS



DELIVERY ADDRESS BARCODE(FEDEX-BOX)

TRK # 7910 4424 2976

20037-DC-US

FedEx PRIORITY OVERNIGHT

IAD

XC DCAA

TUE
A1
Deliver by:
28OCT03



## Shipping Label: Your shipment is complete

Cancel shipment    Edit shipment information    Process another shipment    Repeat last shipment

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/cgi-bin/ship_it/unity/0BfTz7GjWz0EbXu0DiVz6EbZv8AjXs7Ail...  10/27/2003

# EXHIBIT 7

JDO

## AGREEMENT TO ASSIGN COPYRIGHT

### Agreement

1.    Parties.

This Agreement is made between Ralph deToledano, the party of the first part ("RDT"); and W. Mark Felt, Sr. ("WMF") and W. Mark Felt, Jr. ("WMF2"), collectively the party of the second part, referred to herein as "Felt".

2.    Copyright Registration and Ownership.

RDT and WMF are each listed as an author on Certificate of Copyright Registration 405-597, effective date February 4, 1980, of a work entitled THE FBI PYRAMID FROM THE INSIDE by Mark Felt ("The Work").

3.    Purpose of Agreement

Felt wishes to write and/or publish a book concerning the life and career of WMF ("Book"). Felt may incorporate aspects of The Work into any such Book, and therefor wishes to obtain full ownership of the Copyright to The Work and avoid any possible dispute over claims of copyright infringement, or any and all other claims, related to The Work.

4.    Assignment of Copyright.

In consideration of and for the Payments hereunder, RTD agrees to assign and transfer to Felt any and all right, title and interest in and to the aforesaid copyright of and for The Work, without any qualification or limitation, through an Assignment in the form attached hereto as Exhibit "A". RTD also agrees to execute as reasonably necessary any additional paperwork required to effectuate the transfer of all right, title and interest in the copyright.

5.    Payments.

Felt agrees to pay RTD $5,000, after which RTD will execute the Assignment, and after which payment Felt shall be sole and full owner of all such copyright. If at any time Felt or his assignees publish any work based upon said copyright, whether revised or otherwise, Felt shall pay RTD an additional $5,000 upon publication of said work. If Felt does not pay RTD this additional $5,000 within 30 days of publication, RTD is hereby granted a lien on an assignment of any payments or royalties therefrom. The payments described hereunder shall be the full amounts payable by Felt under this agreement.

-1-

6.    <u>Notices.</u>

All notices hereunder shall be sent to the following addresses, or such other address as may be changed or added by written notice under this paragraph:

For Felt:  John D. O'Connor, Esq.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin
Three Embarcadero Center, Seventh Floor
San Francisco, California 94111

For RDT:  Mr. Ralph deToledano
500 23rd Street NW, Apt. 1010
Washington, D.C. 20037

7.    <u>Arbitration.</u>

Should there arise any dispute under this Agreement, or in any way related to the subject matter of this Agreement, the parties agree to a confidential arbitration before a single arbitrator before JAMS/ENDISPUTE, San Francisco, California, under its applicable rules for arbitration.  The Arbitrator hereunder shall decide any questions of venue or location for hearing, deposition, or the taking of any evidence.  All arbitration proceedings shall be kept strictly confidential.

IT IS SO AGREED:

DATED: 4 Nov. '03 _____          _____
                                                                        Ralph deToldano


DATED_____          _____
                                                                        W. Mark Felt, Sr.


DATED_____          _____
                                                                        W. Mark Felt, Jr.

-2-

## ASSIGNMENT OF COPYRIGHT

For valuable consideration the receipt whereof is hereby acknowledged, Mr. Ralph deToledano, ("Assignor") an individual residing in the District of Columbia, hereby grants and assigns to W. Mark Felt, Sr. ("Assignee") all of his right, title and interest to and in Assignor's copyright registered February 4, 1980 in the Copyright Office of the United States by Registration No. 405-597.

DATED: 4 Nov. 03

RALPH deTOLEDANO

WD 050903/1-1529501/62/1073855/v1

EXHIBIT "A"

# EXHIBIT 8

**RALPH de TOLEDANO** _____ *editor, author, columnist*
500 - 23rd Street N.W. Washington, D.C. 20037

6 December 2003

John D. O'Connor, Esq.
Howard Rice Nemerovski
3 Embarcadero Center
San Francisco, CA 94111-4024

Dear Mr. O'Connor:

Release to Mark Felt Jr. of my 50 percent of the copyright of *The FBI Pyramid* was contingent on payment by you of $5,000, plus $5,000 on any use by Mark Felt Jr. of the text and material of the said book.

Though weeks have passed, I have not received the check for $5,000, as specified by our agreement

This is to inform you that, because of your failure to make payment to me as provided for in our agreement, I am canceling that release.

I expect prompt acknowledgment of this letter.

Sincerely your,

Ralph de Toledano

# EXHIBIT 9



**HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN**

*A Professional Corporation*

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.217.5910
*www.howardrice.com*

Writer's Information:
John D. O'Connor
Direct: 415.765.4676
*joconnor@howardrice.com*

December 15, 2003

VIA FEDEX

Ralph de Toledano
500 23rd Street N.W., Apt. 1010
Washington, DC 20037

          Re:    FBI Pyramid

Dear Mr. de Toledano:

        I apologize for my client, who thought he had some money coming in several weeks ago. He tells me there is money that he expects in shortly, and we do expect to be able to pay you by the first of the year, if that is alright.

        Secondly, you had kindly offered the papers you had collected on this matter, and I will be in Washington D.C. (actually Arlington, Virginia) on January 9 for the funeral of a friend who was killed in Vietnam and whose remains have just been located. I would like to meet with you then (hopefully you would have already been paid the $5,000) and get the papers you have.

        As you can imagine this is a highly emotional matter for Mark, Jr., who wants to honor the memory of his father, and we thank you for your patience.

                            Very truly yours,

                            John D. O'Connor

JDO/sem
WD 121503/1-1529501/1119955/v1

# EXHIBIT 10



THE RESOLUTION EXPERTS®

Demand for
Arbitration FILED
Before JAMS

MAY 1 0 2006

## JAMS

TO RESPONDENT: Ralph deToledano
(Name of the Party on whom Demand for Arbitration is made)

(Address)    500 23rd Street N.W., Apt. 1010

(City)  Washington    (State)  DC    (Zip)  20037
(Telephone)    (Fax)    (E-Mail)

Representative/Attorney (if known): Brian DeBoice
(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

(Address)    1920 N Street N.W., Suite 300

(City) Washington    (State)  DC    (Zip) 20036-1622
(Telephone) 202-293-2560 (Fax) 202-293-4827    (E-Mail) brian.deboice @
cohnmarks.com

FROM CLAIMANT (Name): W. Mark Felt

(Address)    c/o John D. O'Connor, 3 Embarcadero Center, 7th Floor

(City)  San Francisco    (State)  CA    (Zip)  94111
(Telephone) 415-765-4676 (Fax) 415-217-5910    (E-Mail)  joconnor @
howardrice.com

Representative/Attorney of Claimant (if known): J. D. O'Connor
(Name of the Representative/Attorney for the Party Demanding Arbitration)

(Address)    Three Embarcadero Center, 7th Floor

(City)  San Francisco    (State)  CA    (Zip)  94111
(Telephone) 415-765-4676 (Fax) 415-217-5910    (E-Mail) joconnor @
howardrice.com

## NATURE OF DISPUTE
Claimant hereby demands that you submit the following dispute to final and binding
arbitration (a more detailed statement of the claim(s) may be attached):

### SEE ATTACHED
## ARBITRATION AGREEMENT
This demand is made pursuant to the arbitration agreement which the parties made as
follows (cite location of arbitration provision & attach two (2) copies of entire agreement).

Provision in attached contract



**THE RESOLUTION EXPERTS®**

# Demand for Arbitration Before JAMS

## CLAIM & RELIEF SOUGHT BY CLAIMANT

Claimant asserts the following claim and seeks the following relief (include amount in controversy, if applicable):

See attached

## RESPONSE

Respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. Send the original response and counter-claim to the claimant at the address stated above with two (2) copies to JAMS.

## Request for Hearing

JAMS is requested to set this matter for hearing at: <u>San Francisco, CA</u>
(Preferred Hearing Location)

Signed (Claimant): _____   Date: <u>May 10, 2006</u>
(may be signed by an attorney)

Print Name: <u>John D. O'Connor, attorney for claimant</u>

Please include a check payable to JAMS for the required initial, non-refundable $300.00 per party deposit to be applied toward your case management fee and submit to your local JAMS office.

Updated 1/15/05
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2005 JAMS. All rights reserved.



THE RESOLUTION EXPERTS®

# Demand for Arbitration Before JAMS

## COMPLETION OF THIS SECTION IS REQUIRED FOR CLAIMS INITIATED IN CALIFORNIA

A. Please check here if this ☐ IS or ☐ IS NOT a CONSUMER ARBITRATION as defined by California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e):

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

    1)   The contract is with a consumer party, as defined in these standards;

    2)   The contract was drafted by or on behalf of the non-consumer party; and

    3)   The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

    1)   An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;

    2)   An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;

    3)   An individual with a medical malpractice claim that is subject to the arbitration agreement; or

    4)   An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.

B. If this is an EMPLOYMENT matter, Claimant must complete the following information:

Effective January 1, 2003, private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

Annual Salary:
    ☐ Less than $100,000     ☐ More than $250,000

    ☐ $100,000 to $250,000     ☐ Decline to State

C. Consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees. In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information.

Updated 1/15/05
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2005 JAMS. All rights reserved.

John D. O'Connor
Three Embarcadero Center
7th Floor
San Francisco, CA 94111
Telephone: (415) 765-4676
Facsimile: (415) 217-5910

W. MARK FELT,
Claimant in Arbitration

     v.

RALPH deTOLEDANO
Respondent in Arbitration

## DEMAND FOR ARBITRATION BEFORE JAMS

COMES NOW, Claimant W. Mark Felt ("Felt"), and demands arbitration before JAMS of Respondent Ralph deToledano ("deToledano").

Felt and deToledano are signatory to the attached contract, incorporated herein by this reference, in which deToledano agreed to assign to Felt, and did assign to Felt, any and all ownership interest of deToledano in and to the copyright of a book called "The FBI Pyramid", to which deToledano and Felt had previously owned half interests. DeToledano claims that Felt owes deToledano damages for misrepresentation in obtaining full ownership or, alternatively, that deToledano is still the owner of one-half interest in the copyright. Felt claims that he is the full owner and owes no damages or share of compensation to deToledano, and asks for Declaratory Relief affirming his position under the contract, which contains a mandatory arbitration clause requiring arbitration before JAMS.

Respectfully submitted,

JOHN D. O'CONNOR

CERTIFICATE OF SERVICE

I am employed in the City and County of San Francisco, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is Three Embarcadero Center, Seventh Floor, San Francisco, California 94111-4024.

On May 10, 2006, I served following document described as:

DEMAND FOR ARBITRATION BEFORE JAMS

on the person listed below by United States Postal Service to be served by mail addressed as follows:

> Mr. Ralph deToledano
> 500 23rd Street N.W., Apt. 1010
> Washington, DC 20037

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California this 10th day of May 2006.

JANET MASLOW

# AGREEMENT TO ASSIGN COPYRIGHT

## Agreement

### 1. Parties.

This Agreement is made between Ralph deToledano, the party of the first part ("RDT"); and W. Mark Felt, Sr. ("WMF") and W. Mark Felt, Jr. ("WMF2"), collectively the party of the second part, referred to herein as "Felt".

### 2. Copyright Registration and Ownership.

RDT and WMF are each listed as an author on Certificate of Copyright Registration 405-597, effective date February 4, 1980, of a work entitled THE FBI PYRAMID FROM THE INSIDE by Mark Felt ("The Work").

### 3. Purpose of Agreement

Felt wishes to write and/or publish a book concerning the life and career of WMF ("Book"). Felt may incorporate aspects of The Work into any such Book, and therefor wishes to obtain full ownership of the Copyright to The Work and avoid any possible dispute over claims of copyright infringement, or any and all other claims, related to The Work.

### 4. Assignment of Copyright.

In consideration of and for the Payments hereunder, RTD agrees to assign and transfer to Felt any and all right, title and interest in and to the aforesaid copyright of and for The Work, without any qualification or limitation, through an Assignment in the form attached hereto as Exhibit "A". RTD also agrees to execute as reasonably necessary any additional paperwork required to effectuate the transfer of all right, title and interest in the copyright.

### 5. Payments.

Felt agrees to pay RTD $5,000, after which RTD will execute the Assignment, and after which payment Felt shall be sole and full owner of all such copyright. If at any time Felt or his assignees publish any work based upon said copyright, whether revised or otherwise, Felt shall pay RTD an additional $5,000 upon publication of said work. If Felt does not pay RTD this additional $5,000 within 30 days of publication, RTD is hereby granted a lien on an assignment of any payments or royalties therefrom. The payments described hereunder shall be the full amounts payable by Felt under this agreement.

-1-

6.    <u>Notices.</u>

All notices hereunder shall be sent to the following addresses, or such other address as may be changed or added by written notice under this paragraph:

For Felt:  John D. O'Connor, Esq.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin
Three Embarcadero Center, Seventh Floor
San Francisco, California 94111

For RDT:  Mr. Ralph deToledano
500 23rd Street NW, Apt. 1010
Washington, D.C. 20037

7.    <u>Arbitration.</u>

Should there arise any dispute under this Agreement, or in any way related to the subject matter of this Agreement, the parties agree to a confidential arbitration before a single arbitrator before JAMS/ENDISPUTE, San Francisco, California, under its applicable rules for arbitration.  The Arbitrator hereunder shall decide any questions of venue or location for hearing, deposition, or the taking of any evidence.  All arbitration proceedings shall be kept strictly confidential.

IT IS SO AGREED:

DATED: 4 Nov. '03 _____          _____
                                                          Ralph deToldano


DATED _____          _____
                                                          W. Mark Felt, Sr.


DATED _____          _____
                                                          W. Mark Felt, Jr.

## ASSIGNMENT OF COPYRIGHT

For valuable consideration the receipt whereof is hereby acknowledged, Mr. Ralph deToledano, ("Assignor") an individual residing in the District of Columbia, hereby grants and assigns to W. Mark Felt, Sr. ("Assignee") all of his right, title and interest to and in Assignor's copyright registered February 4, 1980 in the Copyright Office of the United States by Registration No. 405-597.

DATED: 4 Nov. 03

RALPH deTOLEDANO

WD 050903/1-1529501/62/1073855/v1

EXHIBIT "A"

# EXHIBIT 11



THE RESOLUTION EXPERTS

# COMMENCEMENT OF ARBITRATION

June 27, 2006

Via U.S. Mail & Facsimile

NOTICE TO ALL PARTIES
(Please See Service List)

RE:    **Felt, W. Mark vs. deToledano, Ralph**
       Reference #: 1100047701

Dear Parties:

This confirms that JAMS has received a Demand for Arbitration in the above-referenced matter. The date of commencement of this arbitration is the date of this letter.

Pursuant to the parties' arbitration agreement and JAMS' policy, it is my understanding that this arbitration shall be conducted in accordance with JAMS Streamlined Rules Rules. All arbitrations at JAMS are conducted in accordance with the attached Fee Schedule and Arbitration Administrative Policies regarding payment of fees, document retention, and limitations of liability. It is important to familiarize yourself with the arbitration rules and the JAMS Arbitration Administrative Policies.

Pursuant to the applicable arbitration rules and using the enclosed list of available Arbitrators, the parties are hereby encouraged to mutually agree to an arbitrator.

Resumes are available on our website www.jamsadr.com or by contacting me.

If the parties are unable to mutually agree to an arbitrator, then using the following list of arbitrator candidates each party may strike one (1) name(s) and rank the remaining candidates in order of preference. The deadline for return or your strike-list is close of business **on July 7, 2006:**

> Hon. Charles A. Legge (Ret.)
> Lester J. Levy, Esq.
> Hon. Fern M. Smith (Ret.)

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2006, a true and correct copy of Defendant O'Connor and

Felt Sr.'s Motion to Stay Action Pending Arbitration and Motion to Transfer Venue (Hearing

Requested), Memorandum of Points and Authorities in Support of Defendants John D. O'Connor

and Mark Felt Sr.'s Motion to Stay, Declaration of John D. O'Connor in Support of Motion to Stay,

and Proposed Order was served via regular mail to following counsel of record:

Theodore Allison                    Craig Franco
Karr & Allison                        Timothy McEvoy
1920 N. Street, N.W., Suite 300       Odin, Feldman & Pittleman
Washington, DC 20036              9302 Lee Highway, Suite 1100
ATTORNEY FOR PLAINTIFF       Fairfax, Virginia 22031
                                  ATTORNEY FOR MARK FELT, JR.

_____
Kerrie L. Hook, Esq.

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

RALPH DE TOLEDANO, an individual,       Case No.   1:06CV01214 JDB

     Plaintiff

         v.

John D. O'Connor, Esq.;
William Mark Felt, Jr.;
William Mark Felt, Sr.

_____/

**ORDER TO STAY ACTION PENDING ARBITRATION AND TO TRANSFER VENUE**

The court having considered *Defendants O''Connor and Felt Sr.'s Motion to Stay Action Pending Arbitration and Motion to Transfer Venu* and the Memoranda of Points and Authorities submitted in support and in opposition to the Motions, and after opportunity for hearing and argument, **IT IS ORDERED THAT**:

1.     Except for such proceedings reasonably necessary to transfer this matter to the United States District Court for the Northern District of California, all further proceedings in this action are stayed pursuant to the Federal Arbitration Act (9 U.S.C. § 3) to permit the dispute in this action to be arbitrated pursuant to the Agreement to Assign Copyright; and,

2.     This action, and all further proceedings herein, shall be transferred to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

DATED: _____

                                _____
                                THE HONORABLE JOHN D. BATES
                                UNITED STATES DISTRICT JUDGE