UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

RALPH DE TOLEDANO,                           Case No.   1:06CV01214 (JDB)

      Plaintiff,

        v.

JOHN D. O'CONNOR, ESQ.
WILLIAM MARK FELT, JR.
WILLIAM MARK FELT, SR.

      Defendants.

_____/

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS O'CONNOR AND FELT SR.'S MOTIONS
TO STAY ACTION PENDING ARBITRATION AND TO TRANSFER VENUE;
MEMORANDUM OPPOSING PLAINTIFF'S MOTION TO STAY ARBITRATION**

Despite his attempt to obfuscate the salient issues, plaintiff Ralph de Toledano must abide by

the clear and unambiguous arbitration provision of the Agreement to Assign the Copyright (the

"Agreement") to resolve this dispute.  While Mr. de Toledano is now apparently unhappy with the

agreed upon arbitration provision, there was no fraud relating to it.  First, he is an intelligent man

who signed the written Agreement and has acknowledged his awareness of the arbitration provision

(de Toledano Declaration at paragraph 6).  Second, there is no dispute that he accepted defendants'

performance of the Agreement by cashing the $5,000 check for the assignment.  A copy of the

cancelled check – bearing the signature of Ralph de Toledano – is attached as Exhibit 12 to the

Supplemental Declaration of John D. O'Connor.  If Mr. de Toledano had "repudiated" the

Agreement as he now suggests, he would or should not have negotiated the check.  But he did and

the Agreement is valid and enforceable.  Anticipating the validity of the Agreement, Mr. de

Toledano next contends that the arbitration of this dispute before JAMS will be unconscionable. To the contrary, the designated arbitration procedure is an appropriate and reasonable alternative – contemplated in the Agreement – to the inevitably time consuming and expensive litigation initiated by plaintiff.

## I.    **INTRODUCTORY STATEMENT**

There is much that is not in dispute here. The following uncontested facts demonstrate the validity and enforceability of the written arbitration provision in the Agreement:

1.    The transaction between plaintiff and defendants Felt was a commercial transaction affecting interstate commerce (assignment of copyright interests).

2.    The writing evidencing the Agreement contains an arbitration provision.

3.    Plaintiff knew that each written proposal exchanged between the parties contained an arbitration provision for disputes related to the subject of the Agreement.

4.    No one made any material misrepresentation to plaintiff concerning the existence of the arbitration provision, its purpose, intent and/or effect.

5.    Plaintiff, the party against whom the provision is sought to be enforced, signed the Agreement with knowledge of the arbitration provision.

6.    Under the terms of the Agreement, performance by defendants Felt consisted of

(a)    payment of $5,000 before assignment of plaintiff's copyright interest; and

(b)    payment of an additional $5,000 upon publication of a subsequent work.

7.    Plaintiff received the February 18, 2005 O'Connor letter tendering "a check for $5,000 as payment for the rights to any and all copyright interest [he had] in The FBI Pyramid, previously transferred to [defendants Felt]".

8.    Plaintiff accepted payment and cashed the check without objection, reservation, condition or limitation.

9.    On or about May 1, 2006, approximately one week after publication of the subsequent work about Felt, Sr., an additional $5,000 was tendered to plaintiff.

The only discussion between the parties to arbitration under the Agreement was brief and made in response to plaintiff's questions about royalty issues. (O'Connor Decl., ¶¶7, 8, de Toledano Decl., ¶6). Plaintiff does not claim that O'Connor made any untrue statements regarding either the existence of the arbitration provision or procedures.

Pursuant to the terms of the contract, defendants have initiated arbitration proceedings before JAMS/ENDISPUTE, San Francisco, California; however, plaintiff declined to participate and, instead, subsequently filed this action. (*See*, O'Connor Decl., ¶11, Exs. 10 and 11.) Under all of the evidence and circumstances, Defendants O'Connor and Felt Sr. respectfully request this court to stay this action to permit the arbitration to proceed pursuant to the Agreement and the Federal Arbitration Act ("FAA") 9 U.S.C. § 3, to transfer venue for the convenience of the parties, and to deny plaintiff's motion to stay arbitration.

## II.    PLAINTIFF HAS FAILED TO REBUT THE EXISTENCE OF A VALID, WRITTEN ARBITRATION PROVISION WHICH REQUIRES ARBITRATION OF ALL ISSUES RAISED IN THE COMPLAINT

None of plaintiff's arguments can change the fact that he accepted payment for his copyright interests pursuant to the Agreement which he knew included an arbitration provision.

### A.    There is a Valid, Written Arbitration Provision

The terms of the transaction between plaintiff and defendants Felt are clearly evidenced by the Agreement and known to plaintiff. The only term questioned by plaintiff before execution of the Agreement in November 2003 was how he would be paid for his copyright interests. Plaintiff never

contested, or questioned, any other term, or provision of the Agreement. Plaintiff admits he knew of the arbitration clause before he executed the Agreement and does not contend that any defendant made a material, affirmative misrepresentation about the terms, effect or nature of arbitration under the Agreement.

Defendants acknowledge that defendants Felt did not sign the Agreement, but performance of the contract with reference to its terms constituted acceptance by both plaintiff and defendants. Plaintiff concedes it is hornbook law that consent to and acceptance of a contract can be demonstrated by performance. *Restatement of Contracts 2d, Section 50 (2)* ["Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise".]

In fact, plaintiff's execution of the Agreement and the Assignment constituted not just an "offer" as he now contends, but a tender of full performance of his obligations under the contract. Similarly, the Agreement required defendants Felt to do only 2 things: (1) pay plaintiff $5,000 before the Assignment became effective; and, (2) pay an additional $5,000 upon publication of the subsequent work. Despite his purported revocation, plaintiff undeniably accepted the first payment under circumstances which clearly, specifically and unambiguously referenced the earlier Agreement and he cashed the check without condition, reservation or limitation. Plaintiff's conduct clearly manifested his consent to and acceptance of the Agreement to Assign Copyright in accordance with all of its terms including, but not limited to, the arbitration provision[1].

Plaintiff argues that his acceptance of defendant O'Connor's check did not constitute acceptance of the Agreement, but he makes no effort to justify cashing the check despite a clear and

---

[1] In *Commercial Factors Corp. v. Kurtzman Bros.*, 131 Cal.App.2d 133 (1955), cited by plaintiff, the court refused to enforce an arbitration provision which defendant never saw or knew existed prior to performance of the contract.

unambiguous reference to the transfer of copyrights interests to defendants Felt. No one forced plaintiff to cash the check. Plaintiff never questioned the purpose of the check, did not inquire of defendant O'Connor "who was using the copyright assignment", and did not attempt to return the check to defendant O'Connor or iterate that the Agreement was "canceled." Quite simply, he accepted and cashed the check because he was entitled to it under the terms of the Agreement.

The court is respectfully requested to enforce this Agreement pursuant to 9 USC § 3.

### B.    There Is No Substantial Evidence to Support Plaintiff's Claim that the Arbitration Provision Was Procured by Fraud

Despite the clarity and simplicity of the written arbitration provision in the Agreement, plaintiff contends that his consent to arbitration was procured by fraud **NOT** because anyone made any material, affirmative misrepresentation about arbitration, but evidently because defendant O'Connor did not explain every facet and consequence of every potential method of alternative dispute resolution available in an arms length commercial transaction. Plaintiff asks this court to impose unrealistic and commercially untenable standards of conduct on defendants.

Putting aside the complete lack of any substantial, credible evidence of defendants' fraudulent intent regarding the arbitration provision, the court should keep in mind just what did not occur in this transaction. Plaintiff was not told anything untrue about the arbitration provision or about modern, commercial arbitration proceedings. Plaintiff did not ask defendants to explain anything about the arbitration process. Plaintiff did not express any concern about or objection to arbitration or the selection of JAMS, San Francisco, as arbitrator. Plaintiff did not express any concern or question about the cost of arbitration or any dispute resolution proceedings. Plaintiff did not suggest or request any other method of alternative dispute resolution. Plaintiff and defendants were not partners, or in any form of confidential or fiduciary relationship with respect to this transaction.

Defendants did not lull plaintiff into accepting the provision by representing anything about the cost, timing, location or simplicity of arbitration vs. traditional judicial litigation. Defendants never suggested that they would waive or not enforce the arbitration provision. Finally, defendants did nothing to impair or impede plaintiff's ability to investigate arbitration and/or JAMS, or to seek separate counsel before he entered into the agreement.

Instead, plaintiff's entire argument is based upon defendant O'Connor's truthful response to plaintiff that disputes regarding royalty payments could be submitted to arbitration. That's it.

So, given all of these circumstances, how does plaintiff contend that defendant O'Connor should have responded to his question about resolution of royalty disputes[2]? Plaintiff evidently contends, in retrospect, that his inquiry triggered a duty of defendant O'Connor to fully explain and compare all potential means of commercial dispute resolution despite the undisputed fact that the original question had nothing to do with how a dispute would be arbitrated or the consequences of electing arbitration versus another form of dispute resolution.

Defendant O'Connor is an experienced attorney and litigator; however, it is virtually impossible to anticipate where the boundaries of plaintiff's new, proposed duty to disclose would lie. The factors favoring alternative dispute resolution verses traditional, judicial procedures are numerous and well known. Primary among these factors are the flexibility of arbitration to meet the needs of the parties and the relative speed of final resolution. Title 9 of the ***California Code of Civil Procedure, sections 1280 - 1299.9*** (hereinafter, "***CCP***") provides a comprehensive statutory structure enabling private, contractual arbitration of disputes and includes ethical obligations of arbitrators (***CCP § § 1281.85 - 1281.95***); enables the parties to conduct discovery (***CCP §§ 1282.6 - 1283.05***)

_____

[2]This discussion occurred in relation to the tiered royalty structure providing for differing percentages of royalty sharing based upon the extent to which the original work was used in subsequent works. The flat fee Agreement ultimately accepted by plaintiff obviously had a much simpler payment provision(s).

and confers jurisdiction to conduct hearings (*CCP §§ 1282.2 - 1284.3*.) Unlike litigation in court, private arbitration does require direct compensation of the panelist[3], but there is no evidence that defendant O'Connor knew or reasonably should have known that this was a material fact both unknown to and not reasonably available to plaintiff.

In fact, plaintiff acknowledges and cites the publicly available website of JAMS at page 16 of his brief. The website clearly and comprehensively identifies JAMS, its panelists, its arbitration rules, articles concerning the relative merits of arbitration, and other information and factors which might be of interest to potential litigants and/or clients. In addition to its San Francisco office, JAMS has over 20 offices nationwide including Washington, D.C.[4] and includes among its available panelists many respected, retired jurists of the highest ethical standards and experience in successful resolution of a very wide variety of disputes. Selection of JAMS to arbitrate disputes under the Agreement was intended to foster fast, fair and efficient resolution of disputes, not to disadvantage plaintiff.

What then, under plaintiff's proffered rule, was the scope of defendant O'Connor's duty to plaintiff? The various cases cited by plaintiff provide absolutely no guidance for this case. Virtually all of plaintiff's authorities arise where one party in a transaction knowingly withholds information clearly material to the transaction which the other party has no reasonable opportunity to acquire or, based upon the superior knowledge or position of the first party, to suspect that the information is incomplete. For example, *Pashley v. Pacific E. & R. Co.*, 25 Cal.2d 226; 153 P.2d 325 (1944) arose from a claim that a company doctor treating an accident victim concealed the clearly material facts

---

[3]See *e.g.*, *CCP § 1284.2*.

[4]By its terms, the arbitration provision confers the issue of venue and the location and manner of discovery to the arbitrator. Plaintiff will have a full and fair opportunity to address such issues with the arbitrator and to obtain equitable considerations regarding the burden of litigation and convenience of the parties and witnesses.

that the injury was far worse than represented and that plaintiff needed additional treatment; and, in *Warner Constr. Corp. v. Los Angeles*, 2 Cal.3d 285, 466 P.2d 996 (1970) a city failed to disclose known, material, subsurface site condition from a contractor which had significant and substantial effect upon the cost of doing the work specified by the contract. Similarly, *Lingsch v. Savage*, 213 Cal. App.2d 729; 29 Cal. Rptr. 201 (1963) involved a concealment by real property sellers and their agents of material information about the property which California law required them to disclose to the purchaser (i.e., illegal construction and a pending condemnation order.)

We are, then, left to speculate on the scope of defendants' purported duty to disclose based upon plaintiff's hyperbolic arguments.

Is defendants' purported duty limited to the issue of cost? If so, what costs were defendants obligated to disclose and to what extent? Were defendants obligated to anticipate and speculate upon the ultimate cost of litigation in federal and/or state court including potential appeals vs. arbitration based upon a hypothetical dispute? Does the duty obligate defendants to speculate and advise plaintiff about the rates or alternative fee agreements which hypothetical counsel might require to represent him in a dispute[5]? Does defendants' duty include discussions regarding the cost he might incur if defendants Felt filed suit against him in the Superior Court of California or the Northern District of California instead of arbitration? Does defendants' duty include discussions about the difference in costs to conduct an informal arbitration hearing compared to a jury trial?

Does plaintiff contend that defendants' proposed duty also includes disclosure of procedural issues? If so, are defendants required to compare litigation under the Federal Rules of Civil

---

[5]Defendants, for example, could not anticipate whether his counsel would or would not "front" his litigation costs. Although such arrangements are not unusual, plaintiff's counsel in this case is evidently unwilling to do so regardless of the perceived value of the case. (*See*, Plaintiff's Memorandum pp. 21-22.) Had defendants stated that counsel might do so, would they now be obligated to front his share of arbitration fees in lieu of his counsel?

**REPLY MEMORANDUM IN SUPPORT OF MOTIONS FOR STAY PENDING ARBITRATION AND TO TRANSFER VENUE**

Procedure with various state procedural rules?  Are defendants required to obtain and attach current

JAMS arbitration rules and discuss them in detail with plaintiff?  Are defendants required to discuss

and compare the rules of evidence and for the conduct of hearings in each federal or state jurisdiction

where venue might be proper as well as those applicable to arbitrations in each jurisdiction?

Obviously, the foregoing list addresses only some of the potential issues related to arbitration,

but that was not the question or issue raised by plaintiff.  At most, arbitration was ancillary to

plaintiff's interest which was clearly the amount and manner of payment for his copyright interest in

the life story of Felt, Sr.  How much time must defendants have expended addressing such ancillary

considerations never questioned by plaintiff at the time of the transaction?  The court is respectfully

requested to reject plaintiff's contention and enforce the Agreement.

Even cases cited by plaintiff hold that fraudulent concealment requires intentional or

knowledgeable concealment.  In ***Funk v. Sperry Corp.***, 842 F.2d 1129 (9th Cir. 1988), cited by

plaintiff at page 19 of his brief, the court ruled,

> "It is true that a duty to disclose can also arise when one party has superior
> knowledge, or uses half-truths to mislead another party. See *4 B.E. Witkin, Summary
> of California Law § 462, at 2726-28* (8th ed. 1974). We need not decide whether
> Sperry had a duty to disclose under this doctrine, because even if it did, no evidence
> has been presented that tends to show that Sperry withheld information from Funk
> with the intent to deceive. Scienter is a necessary element of a fraud claim. See id.
> § 446, at 2711." ***Funk v. Sperry Corp., 842 F.2d 1129, 1134 (9th Cir. 1988)***

It would strain credulity to conclude from the mere mention of arbitration in response to a

question about royalty disputes, that defendants intentionally concealed the nature and effect of the

arbitration provision or that defendants knew or should have known that the "undisclosed" nature of

arbitration proceedings was material to plaintiff's acceptance of the Agreement.

Plaintiff attempts to bolster his case by repeated references to his age and long residence in

the District of Columbia, but plaintiff is neither unsophisticated nor incapable of appreciating the

gravamen of a contract. Plaintiff's own letterhead (*see, for example*, O'Connor Decl., Ex. 3) describes himself as "editor, author, columnist." Publicly available reference materials list plaintiff as the author of numerous books and articles displaying sophisticated knowledge, investigative skills and critical insight. (*See, for example*, get Cited.org.)  Biographical information on the popular internet encyclopedia, Wikipedia, similarly extols plaintiff's education, knowledge, insight and experience up to the present time.  (http://en.wikipedia.org/wiki/Ralph_de_Toledano).  Plaintiff was certainly capable of understanding the effect of an arbitration provision and requesting and obtaining additional information if he had any questions or concerns about its inclusion in the contract.

Despite plaintiff's puffing and bluster, there was no fraud in the procurement of plaintiff's consent to the arbitration provision of the contract.  The arbitration provision is clear and unambiguous, is statutorily favored, is neutral to the parties, was not the subject of any significant discussion, and was incidental to the subject of the contract.  The reference to arbitration by defendant O'Connor did not trigger any duty to instruct plaintiff on all of the pros and cons of arbitration, nor furnish plaintiff with grounds to evade his promise to submit to arbitration.

### C.  Arbitration of this Dispute Is Not Unconscionable

Plaintiff next claims that the arbitration provision is unconscionable and should not be enforced.  His contention is evidently based on three primary grounds: (1) excessive cost; (2) inability to conduct discovery; and, (3) lack of mutuality.  None of these grounds has substantial merit nor excuses plaintiff's failure to participate in the arbitration of this matter.

Any discussion of litigation costs must necessarily consider the amount in controversy between the parties.  In this case, plaintiff claims a 50% interest in all proceeds related to the life story of Felt, Sr. including books, and movie rights.  Plaintiff further claims that the book rights

alone are reportedly worth approximately $1 million (see, Complaint, ¶20)[6]. In light of this substantial claim and the potential complexity of the issues, arbitrator fees estimated by JAMS are neither so unreasonable and unjust as to shock the conscience nor unrelated to the issues and anticipated costs to resolve the dispute.

The cases cited by plaintiff regarding the excessive cost of arbitration are generally distinguishable and not applicable to this claim. For example, *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1 (1994) involved a dispute over a security agreement on a letter of credit, but the court noted that a finding of substantive unconscionability requires a finding that the provision unreasonably favors the party charged with unconscionability. The court in *Brower v. Gateway 2000*, 676 N.Y.S.2d 569 (N.Y. App. Div. 1998) did find the filing fees of the contractually specified arbitrator to be excessive, but the amount of those fees exceeded the probable value of most claims likely to be filed. *Cole v. Burns Int'l Servs.*, 105 F.3d 1465 (D.C. Cir. 1997) affirmed enforcement of the arbitration clause but noted that neither the agreement nor the arbitrator's rules specified allocation of fees and held that for an arbitration of a claim for employer violations of statutory rights, the employer was obligated to bear the costs.[7]

Plaintiff especially appears to rely upon *Teleserve Sys., Inc. v. MCI Telecommunications Corp.*, 230 N.Y.S.2d 659 (N.Y. App. Div. 1997) where an arbitrator's <u>filing fee</u> was held to be unconscionable. In *Teleserve*, the arbitrator's special "MCI Tariff" provided for an initial filing fee equal to $4,000 plus 0.5% of the claim - a fee entirely unrelated to the anticipated administrative costs of the proceedings. The court found that this $204,000 fee, imposed only on the claimant,

---

[6]Defendants make no representation or admission regarding the veracity of this claim or reasonableness of this estimate.

[7]The court is requested to take judicial notice that JAMS Arbitration rules, available at its website, have special provisions limiting fees for consumer and employment litigation where substantial arbitration fees are more likely to present a barrier to complainants with typically smaller claims and of unequal bargaining power.

unreasonably favored MCI; however, the court raised no objection nor expressed any direct concern about the arbitration panelist's professional fees - the subject of plaintiff's objection on this motion.

Plaintiff extensively quotes ***Rollins, Inc. v. Foster***, 991 F.Supp. 1426 (M.D. Ala 1998), in support of his position, but the court affirmed the reference to arbitration of a consumer's claim distinguishing between an unconscionable fees which effectively bar a claimant's rights from those fees which are merely very high in relation to traditional litigation. ***Id.*** at p. 1437-1438. Just as in ***Rollins, Inc.*** plaintiff makes no real effort to demonstrate that his access to the arbitral forum has been foreclosed by the allegedly excessive cost of arbitration in this case.

Plaintiff attempts to bolster his argument of unconscionability by repeatedly stressing the cost, expense and inconvenience of litigating this matter in San Francisco. Plaintiff's argument plainly ignores the parties express agreement that the arbitrator is to determine issues of venue and location of hearings and discovery. The flexibility of arbitration gives the arbitrator authority to address the needs and considerations of the parties and to manage the proceedings to do equity and serve the interests of justice. For example, an arbitrator could permit parties and witnesses to appear by teleconference or videoconference using its offices in San Francisco, Washington, D.C., Atlanta, New York, and Los Angeles to coordinate and facilitate the proceedings. This could dramatically reduce costs for **all parties and witnesses** not just one side or the other. Rather than supporting plaintiff's claim of unconscionability, the distances between and among the parties is a strong argument in favor of arbitration and amelioration of costs for all parties.

Plaintiff's equally misplaced arguments based upon the wisdom of submitting arbitrability of the dispute to the arbitrator, the inadequacy of discovery, and the lack of mutuality may be quickly and summarily dismissed. First, determination of arbitrability is clearly within the authority of the arbitrator under the FAA. ***Mitsubishi Motors v. Soler Chrysler-Plymouth***, 473 U.S. 614 (1985);

*Greentree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003).  Second, California law provides the parties full discovery rights in contractual arbitration[8].  (See, *CCP §1283.05*).  Finally, the arbitration provision was clearly embodied in the written agreement which defendants accepted by performance and was equally binding and enforceable against them.  This was clearly not a contract of adhesion, but one negotiated at arms length as demonstrated by the revision of the original payment provisions upon plaintiff's objection.  Plaintiff has presented no evidence of his inability to negotiate the arbitration provision should he have so chosen at the time of contracting.

There are no valid grounds for plaintiff's failure to arbitrate this dispute and this action should be stayed in favor of arbitration.

### D.    The Arbitration Provision Is Clearly Enforceable as to O'Connor

Plaintiff's final attempt to evade arbitration is directed only at defendant O'Connor and does not affect his obligation to arbitrate disputes with defendants Felt.  Plaintiff's arguments completely fail to address the issue underlying the arbitrability of his claims against O'Connor - that all issues, claims and controversies between plaintiff and defendants are inextricably intertwined and arise out of the contract.

Plaintiff accurately summarizes much of *Britton v. Co-Op Banking Group*, 4 F.3d 742 (9th Cir. 1993), but stops critically short of completing his analysis.  As the court stated,

> "That leads us to the key question: Did any of Liebling's alleged wrongdoing as agent, officer or employee of GDL during this alleged period of time relate to or arise out of the contract containing the arbitration clause?"  *Id.* at p. 747.

---

[8]Plaintiff mistakenly cites CCP § 1283(e) for the contrary proposition but presumably refers to § 1283.05(e) which requires pre-approval of deposition discovery for limited civil cases.  (§ 1283.05(a)).  A limited civil case has an amount in controversy not exceeding $25,000.  (CCP § 85)

Plaintiff completely fails to address this question in his opposition to this motion. In *Britton*, the court found that the allegedly fraudulent activities of Liebling were not related to the contract, but to extra-contractual efforts to defraud the plaintiffs out of their right to obtain relief against his principal. In sharp contrast, all of plaintiff's claims against defendant O'Connor relate directly to the formation, scope and intent of the contract between and among plaintiff and O'Connor's principals, defendants Felt. It is wholly irrelevant and immaterial whether or not defendant O'Connor was also pursuing his own economic interests at the time he was representing his principals. As long as all of the alleged conduct relates to and arises out of the "Agreement, or in any way related to the subject matter of [the] Agreement," the parties agreed to submit the dispute to arbitration. This includes plaintiff's claims against defendant O'Connor as well as defendants Felt.

Plaintiff has raised no substantial ground to excuse compliance with the written arbitration provision in his Agreement with defendants Felt and this action must be stayed in favor of arbitration pursuant to 9 U.S.C. § 3.

### III.    THE BALANCE OF FACTORS UNDER 28 U.S.C. § 1404 SUPPORTS TRANSFER TO THE NORTHERN DISTRICT CALIFORNIA

28 USC Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

It is clear that plaintiff's complaint *might have been brought* in the Northern District California.

Since plaintiff's complaint invokes both diversity and federal question jurisdiction (Complaint, para. 2), venue is governed by the rules in federal question cases. **Macon Grocery Company v. Atlantic Coastline Railroad**, 215 U.S. 501, 507-508 (1910). Under the venue rules for federal question cases, venue is available in the Northern District California because that is where

---

"a substantial part of the events or [alleged] omissions giving rise to the claim occurred", and, independently, because that is where "any defendant may be found". 28 USC Section 1391(b)(2) and (b)(3). Both defendant Felt Sr. and defendant O'Connor currently live in Northern California, that is where both resided at all times during the negotiations with plaintiff, that is where O'Connor drafted the Agreement, that is where O'Connor drafted his letters to plaintiff, that is where plaintiff sent his letters to O'Connor, and that is where the checks were drawn and sent. (O'Connor Declaration, ¶¶14 and 17.)

### IV.  THE ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT CALIFORNIA FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES AND THE INTERESTS OF JUSTICE

Before consideration of the factors specified under 28 U.S.C. § 1391, the court should give deference to the choice of the parties in the Agreement to submit this matter to arbitration in San Francisco which is within the Northern District of California ("Northern District"). Regardless of where and in what manner the arbitrator ultimately decides to conduct this matter, the proceedings should be supervised by the District in which the arbitration is to occur.

Should this court rule that the dispute is not controlled by the written Agreement to arbitrate, the balance of factors under 28 U.S.C. § 1440(a) and § 1391(b) support transfer to the Northern District of California.

28 U.S.C. § 1391(b) provides, in pertinent part:

"a civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

As clearly demonstrated by the facts and discussion in defendants' opening brief (1) not all defendants reside in the same State, but most reside in the Northern District of California; (2) the underlying transaction clearly occurred in multiple districts, but more of the events occurred in and the "property" at issue is situated in the Northern District; and, (3) no defendant may be found in the District of the District of Columbia. ("D.D.C.")

While conclusions (1) and (3) above are beyond dispute, plaintiff vainly attempts to shift the burden of events and property away from the Northern District. As more fully explained in defendants' opening brief, the majority of the allegedly actionable activities originated in the Northern District including the various letters, agreements, and telephone communications; and, Felt, Sr., about whose life story this controversy centers resides in the Northern District.

Defendants will not repeat all of the valid reasons for transfer of venue under 28 U.S.C. § 1440(a) discussed in their opening brief and submit that plaintiff has failed to satisfactorily rebut the evidence and issues produced by defendants in support of transfer. The weight of applicable factors under both 28 United States District Court § 1391(b) and, 28 United States District Court § 1404(a) strongly favor transfer of this action from the United States District Court for the District of Columbia to the United States District Court for the Northern District of California, and this court should so exercise its discretion.

## V.    **CONCLUSION**

The court is respectfully requested to effect the express, written agreement of the parties to submit all aspects of this dispute to JAMS, San Francisco and to reject plaintiff's outlandish argument that he was "duped" into the arbitration to which he agreed. Federal public policy strongly supports arbitration of private, commercial disputes and plaintiff cannot demonstrate that he was unaware of the arbitration provision when he signed the Agreement or when he accepted defendants

Felt's performance pursuant to its terms. Arbitration under the Agreement is not unconscionable where the fees are reasonable and the arbitrator's broad and flexible authority may craft a procedure which is eminently fair and equitable to all parties rather than one side or the other. Finally, the balance of relevant factors supports transfer to the United States District Court for the Northern District of California.

For all of the foregoing reasons, Defendants O'CONNOR and FELT SR. respectfully request this court to grant their motions to (1) stay this action pending arbitration; and, (2) transfer this action to the Northern District of California for all further proceedings and to deny plaintiff's motion to stay the arbitration in favor of this litigation.

Dated: _September 18, 2006_

_____
Kerrie L. Hook, Esq. (DC Bar No. 421289)
**KELLEY DRYE COLLIER SHANNON**
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C. 20007-5108
Telephone:    (202) 342-8400
Facsimile:    (202) 342-8451

Attorneys for Defendants
JOHN D. O'CONNOR and
WILLIAM MARK FELT, SR.

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2006, a true and correct copy of the Reply

Memorandum of Points and Authorities in Support of Defendants O'Connor and Felt Sr.'s Motions

to Stay Action Pending Arbitration and to Transfer Venue; Memorandum Opposing Plaintiff's

Motion to Stay Arbitration was served via regular mail to following counsel of record:


Theodore Allison
Karr & Allison
1920 N. Street, N.W., Suite 300
Washington, DC 20036
ATTORNEY FOR PLAINTIFF

Craig Franco
Timothy McEvoy
Odin, Feldman & Pittleman
9302 Lee Highway, Suite 1100
Fairfax, Virginia 22031
ATTORNEY FOR MARK FELT, JR.


_____
Kerrie L. Campbell, Esq.